UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ALTA DEVICES, INC.,<br><br>       Plaintiff,<br><br>    v.<br><br>LG ELECTRONICS, INC.,<br><br>       Defendant. | Case No. 18-CV-00404-LHK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 26 |

Plaintiff Alta Devices, Inc. ("Alta") filed this suit against LG Electronics, Inc. ("LGE") that claims that LGE misappropriated its trade secrets. Before the Court is LGE's Motion to Dismiss. Having considered the parties' briefs, the relevant law, and the record in this case, the Court GRANTS IN PART and DENIES IN PART LGE's Motion to Dismiss.

## I.     BACKGROUND

Plaintiff Alta is a corporation that was founded in 2008 in Silicon Valley. ECF No. 1 ("Compl.") ¶ 8. As of 2011, Alta was the world's only known manufacturer of thin-film solar technology using Gallium Arsenide ("GaAs") for widespread commercial use. *Id.* ¶¶ 7–10. Such technology allows devices coated in the thin GaAs solar film to be "powered by this independent energy source." *Id.* ¶ 9. Defendant LGE is a Korean company and one of the world's largest

electronics manufacturers. *Id.* ¶¶ 2, 38. Alta alleges that prior to June 2011, LGE had not attempted development of thin-film GaAs solar cells. *Id.* ¶ 38.

By 2011 and early 2012, Alta had already developed a "demonstrative production line" of thin-film GaAs solar cells and was "prepared to implement a small-scale production line with a capacity of 10MW, to be financed through a 'Series D' investment offering." *Id.* ¶ 11. Alta planned to then increase its scale to a "large, commercially viable manufacturing facility which could produce the thin-film device with quality, uniformity, and economic cost, first at a capacity of 40MW and then at a capacity of 165MW." *Id.* Alta alleges that LGE was one company that showed interest. *Id.* ¶¶ 38–39.

In early June of 2011, Alta and LGE entered into discussions regarding possible investment or other business opportunities related to Alta's technology. *Id.* ¶ 40. On June 13, 2011, Alta and LGE entered into a mutual non-disclosure agreement ("2011 NDA," or "Agreement") that prohibited both parties from disclosing or using "Confidential Information" disclosed by the other party in connection with discussions regarding the potential business opportunities. *Id.* ¶ 41. The 2011 NDA defines "Confidential Information" as:

> [A]ny data or information that is proprietary to the disclosing party and not generally known to the public, whether in tangible or intangible form, whenever and however disclosed, including but not limited to: (a) any marketing strategies, plans, financial information, forecasts, or projections, operations, sales estimates, business plans and performance results relating to the past, present or future business activities of such party, its affiliates, subsidiaries and affiliated companies; manufacturing partners, or manufacturing licensees; (b) plans for customers, products or services, and customer or supplier lists; (c) any scientific or technical information, inventions, designs, schematics, technical drawings, architectures and architectural concepts, composition of matter, processes, procedures, formulae, improvements, technologies, methods or other innovations; (d) any concepts, reports, data, know-how, works-in-progress, designs, development tools, specifications, computer software, source code, object code, flow charts, databases, information or trade secrets; (e) any other information that should reasonably be recognized as Confidential Information of the disclosing party; and (f) any summaries and analyses thereof prepared by the receiving party . . . . Confidential Information need not be novel, unique, patentable, copyrightable, or constitute a trade secret in order to be designated Confidential Information.

*Id.* ¶ 42 (quoting Compl. Exh. A ¶ 1(i)). The parties further agree that "the Confidential

Information is proprietary to the disclosing party [(Alta)], has been developed and obtained through great efforts and expense by the disclosing party, and that disclosing party regards all of its Confidential Information as trade secrets." *Id.* ¶ 43 (quoting Compl. Exh. A ¶ 1(i)).

To protect the value of the investment in the Confidential Information, the 2011 NDA restricts use of the Confidential Information to use in consideration of discussions regarding potential business activities among the parties:

> The receiving party [(LGE)] agrees to use the Confidential Information solely in connection with the current or contemplated business relationship between the parties and not for any purpose other than as authorized by this Agreement without the prior written consent of an authorized representative of the other party. Further, the receiving party agrees not to reverse engineer, decompile or disassemble any Confidential Information. No other right or license, whether expressed or implied, in the Confidential Information is granted to the receiving party. Title to the Confidential Information will remain solely in the disclosing party. All use of the Confidential Information by the receiving party shall be for the benefit of the disclosing party and any modifications and improvements thereof (e.g., summaries and analyses thereof) by the receiving party shall be the sole property of the disclosing party).

*Id.* ¶ 44 (quoting Compl. Exh. A ¶ 3).

Alta alleges that two terms are covered under Section 5 of the 2011 NDA: (1) "the time for the parties' disclosure of Confidential Information," and (2) "the duration of the duty to hold in confidence the Confidential Information disclosed." *Id.* ¶ 45 (citing Compl. Exh. A ¶ 5). The text of Section 5 of the 2011 NDA specifically provides:

> **Term.** The term for the parties' disclosure of Confidential Information under this Agreement ("Disclosure Period") shall be one (1) year (extendable by addendum) from the Effective Date. The parties' duty to hold in confidence Confidential Information that was disclosed during the Term shall survive for an additional three (3) years after the expiration of this Agreement.

Compl. Exh. A ¶ 5.

The 2011 NDA further provides in Section 6 that upon the request of the disclosing party, the

> [r]eceiving party shall immediately return and redeliver to the disclosing party, all tangible material embodying the Confidential Information provided hereunder, and all notes, summaries, memoranda, drawings, manuals, records, excepts [sic], or

3

derivative information derived therefrom, and all other documents or materials ("Notes") (and all copies of any of the foregoing, including but not limited to "copies" that have been converted to computerized media in the form of image, date, or word processing files either manually or by image capture) based on or including any Confidential Information, in whatever form of storage or retrieval, upon the earlier of (i) the completion or termination of the dealings between the parties contemplated hereunder; (ii) the termination of this Agreement; or (iii) at such time as the disclosing party may so request. . . .

Compl. ¶ 46 (quoting Compl. Exh. A ¶ 6).

Alta alleges that as a result of the 2011 NDA, LGE gained information "showing the financial and technical feasibility of the mass-production of Alta Devices' solar film technology, testing information, and plans for improvement, as well as other Confidential Information." *Id.* ¶ 50.

On October 31, 2011, LGE visited Alta to learn more about Alta's technology, through which LGE gained additional Confidential Information. *Id.* Alta alleges that "[b]y November 7, 2011, [LGE] intentionally began to plan how to develop in-house Alta's technology." *Id.* Further, Alta alleges that LGE represented an intention to invest not only in the "Series D" investment, but also advancing stages of participation. *Id.* ¶ 51. Alta maintains that this representation led to LGE seeking and receiving further detailed information about the techniques and processes involved in the actual manufacturing of the solar film developed by Alta. *Id.* ¶¶ 51–55. However, after receiving this Confidential Information from Alta, LGE declined to make binding its previous tentative investment offer. *Id.* ¶ 56.

Alta alleges that in late 2013 and early 2014, LGE posed as a potential costumer interested in purchasing GaAs thin-film for incorporation onto its manufactured mobile devices and sought and received a sample of Alta's GaAs thin-film for testing its "charging efficiency." *Id.* ¶ 64. LGE then used this material for technical analysis and reverse engineering to assist LGE in developing its own manufacturing process. *Id.* LGE then developed its manufacturing capabilities using Alta's Confidential Information and is now producing very similar thin GaAs solar film while moving toward full-scale, mass-commercialized economical production. *Id.* ¶ 17. LGE is currently marketing its GaAs thin-film that Alta alleges is manufactured using Alta's Confidential

Information. *Id.* ¶ 18.

Alta alleges that it only learned of LGE's misappropriation of Alta's trade secrets in mid-2016. *Id.* ¶ 65. Publications produced by LGE described solar cell structures manufactured using similar manufacturing techniques as Alta's, and an LGE patent application appears to incorporate similar aspects of Alta's production process and tooling. *Id.* ¶¶ 66–72.

As a result, Alta sought reassurances from LGE and requested that LGE return Alta's Confidential Information pursuant to the 2011 NDA. *Id.* ¶¶ 74–75, 78–79, 80–81, 83. LGE refused to return all of Alta's Confidential Information. *Id.* ¶¶ 77, 86. LGE also "unintentionally discarded" two of the five solar cell samples it had received from Alta. *Id.* ¶ 87. Moreover, Alta alleges that the materials LGE did return had redacted summaries and analysis of Alta's Confidential Information, and that much of the production "consisted of many LG[E]-branded documents that appeared to be presentations summarizing the results of LG[E]'s testing, analysis, use and study of Alta's Confidential Information." *Id.* ¶¶ 59–63, 77.

Alta claims that LGE's use of Alta's trade secrets has diminished and may destroy the market for Alta's proprietary product and that Alta's very existence is threatened by LGE's use of Alta's Confidential Information obtained under the 2011 NDA. *Id.* ¶¶ 20–21; 90–92. Consequently, Alta's Complaint asserts five claims for relief. First, Alta claims that LGE misappropriated Alta's trade secrets in violation of 18 U.S.C. § 1836, *et seq*, the Defend Trade Secrets Act ("DTSA"). *Id.* ¶¶ 92–102. Second, Alta claims that LGA misappropriated Alta's trade secrets in violation of California Civil Code § 3426, *et seq*, the California Uniform Trade Secrets Act ("CUTSA"). *Id.* ¶¶ 103–11. Third, Alta brings a breach of contract claim, arguing that LGE breached the 2011 NDA. *Id.* ¶¶ 112–18. Fourth, Alta alleges violations of California Bus. & Prof. Code. § 17200, California's Unfair Competition Law ("UCL)," under the unlawful, unfair and fraudulent prongs. *Id.* ¶¶ 119–24. Finally, Alta seeks a declaratory judgment affirming that LGE breached its duties under the 2011 NDA and used Confidential Information of Alta in such breach. *Id.* ¶¶ 125–30.

Alta filed its Complaint on January 18, 2018. *See* Compl. On June 18, 2018, LGE filed its

Case No. 18-CV-00404-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

Motion to Dismiss. ECF No. 26 ("Mot."). Alta opposed on July 16, 2018. ECF No. 33 ("Opp'n"). LGE replied on August 6, 2018. ECF No. 42 ("Reply").

## II.    LEGAL STANDARD

### A.  Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The United States Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

**B. Leave to Amend**

If the Court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

**III.    DISCUSSION**

Alta's Complaint asserts five causes of action: (1) misappropriation of trade secrets in violation of DTSA; (2) misappropriation of trade secrets in violation of CUTSA; (3) breach of contract; (4) UCL violations; and (5) declaratory judgment. Compl. ¶¶ 93–130. LGE moves to dismiss Alta's Complaint in its entirety, pursuant to Rule 12(b)(6), for failure to state a claim. *See* Mot. at 1. The Court explores LGE's arguments to dismiss each of Alta's claims in turn.

**A.    Misappropriation of Trade Secrets in Violation of DTSA and CUTSA**

To state a claim for trade secret misappropriation under the DTSA and the CUTSA, a plaintiff must allege that: "(1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff." *Space Data Corp. v. X*, No. 16-cv-03260-BLF, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017) (citation omitted); *CytoDyn of New Mexico, Inc. v. Amerimmune Pharm., Inc.*, 160 Cal. App. 4th 288, 297 (2008); *see also* 18 U.S.C. § 1839(5); Cal. Civ. Code § 3426.1(b). "The elements of misappropriation under the DTSA are similar to those under the CUTSA," *Space Data Corp.*, 2017 WL 5013363, at

United States District Court
Northern District of California

*2, except that the DTSA applies only to misappropriations that occur or continue to occur on or after its date of enactment on May 11, 2016. *See Veronica Foods Co. v. Ecklin*, No. 16-cv-07223-JCS, 2017 WL 2806706, at *13 (N.C. Cal. June 29, 2017); *Case Consulting Grp. Inc. v. Truven Health Analytics Inc.*, No. 15-cv-02177-SI, 2017 WL 1436044, at *4 (N.D. Cal. Apr. 24, 2017).

The DTSA defines a "trade secret" as "financial, business, scientific, technical, economic, or engineering information" that "(A) *the owner thereof has taken reasonable measures to keep . . . secret*; and (B) . . . derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3) (emphasis added). "Trade secret" is defined under the CUTSA as "information, including a formula, pattern, compilation, program, device, method, technique, or process that: (1) [d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) *[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy*." Cal. Civ. Code § 3426.1(d) (emphasis added). Under both the DTSA and the CUTSA, "misappropriation" means either (1) the "[a]cquisition of a trade secret by another person who knows or has reason to know that the trade secret was acquired by improper means;" or (2) the "[d]isclosure or use of a trade secret of another without express or implied consent." 18 U.S.C. § 1839(5); Cal. Civ. Code § 3426.1(b).

The crux of Alta's claim for misappropriation of trade secrets in violation of the DTSA and the CUTSA is that LGE received Confidential Information constituting trade secrets pursuant to the 2011 NDA and that LGE has misappropriated and threatens to further misappropriate Alta's trade secrets by "both selling devices manufactured using Alta's proprietary, trade secret[s] and Confidential Information, and by claiming as its own intellectual property devices and processes developed using such information." Compl. ¶¶ 93–111.

LGE presents two main arguments as to why Alta's DTSA and CUTSA claims should be dismissed. First, LGE argues that Alta has failed to allege any trade secrets that were in existence

after June 13, 2015, which LGE maintains is fatal to both Alta's DTSA and CUTSA claims. Mot. at 2–8. Second, LGE argues that Alta has failed to describe the trade secrets that were misappropriated with sufficient particularity. *Id.* at 9–12. The Court considers these arguments in turn. For the reasons set forth below, the Court holds that Alta adequately plead claims under the DTSA and the CUTSA and therefore DENIES LGE's Motion to Dismiss these claims.

### 1. Whether Alta has Plead the Existence of "Trade Secrets" after June 13, 2015

LGE attacks Alta's DTSA and CUTSA claims for not alleging trade secrets during the relevant time in question because LGE argues that Alta cannot allege any trade secrets in existence after June 13, 2015. A "trade secret" is defined as such if "the owner thereof has taken *reasonable measures* to keep such information secret." 18 U.S.C. § 1839(3) (emphasis added); *see also* Cal. Civ. Code § 3426.1(d). LGE's argument that Alta failed to allege any trade secrets in existence after June 13, 2015 is effectively twofold: (1) pursuant to the 2011 NDA, LGE had *no duty* to hold in confidence the Confidential Information after June 13, 2015; and (2) Alta did not take *any* measures (let alone reasonable ones) to extend LGE's confidentiality obligations after that date. Mot. at 5–8. LGE argues that the lack of trade secrets after June 13, 2015 is fatal to Alta's DTSA claim because the DTSA requires that misappropriations occur or continue to occur on or after DTSA's date of enactment on May 11, 2016. Mot. at 3; *see Veronica Foods Co.*, 2017 WL 2806706, at *13. LGE argues that the non-existence of trade secrets after June 13, 2015 is also fatal to Alta's CUTSA claim because Alta's Complaint alleges only specific acts of unauthorized use occurring *after* June 13, 2015, and Alta cannot state a claim for misappropriation "absent establishment of a predicate trade secret." Mot. at 9.

Specifically, LGE relies on Section 5 of the 2011 NDA (the "Term Provision") to support its position that its obligations to keep Alta's Confidential Information secret expired by June 13, 2015. Under the Term Provision, the parties provided:

> **Term.** The term for the parties' disclosure of Confidential Information under this Agreement ("Disclosure Period") shall be one (1) year (extendable by addendum) from the Effective Date. *The parties' duty to hold in confidence Confidential Information that was disclosed during the Term shall survive for an additional*

9

*three (3) years after the expiration of this Agreement.*

Compl. Exh. A ¶ 5 (emphasis added). According to LGE, this provision provides that the "term" of the "Disclosure Period" commenced at execution of the Agreement on June 13, 2011 (the "Effective Date"). The Disclosure Period then ended "one (1) year" later, on June 13, 2012. LGE interprets the "expiration of this Agreement" to have occurred on June 13, 2012, the end of the Disclosure Period. LGE then interprets the Term Provision as requiring LGE to hold the Confidential Information for "three (3) years" after June 13, 2012, which is both the date of the Agreement's expiration and the end of the Disclosure Period. Thus, LGE's duty to hold in confidence ended on June 13, 2015. Mot. at 6; *see also* Compl. Exh. A ¶ 5. Given this reading of the Term Provision, LGE argues that Alta had no expectation of secrecy after June 13, 2015. Mot. at 7 (citing *Silicon Image, Inc. v. Analogix Semiconductor, Inc.*, No. C-07-00635 JCS, 2008 WL 166950, at *17 (N.D. Cal. Jan. 17, 2008)).

Thus, the main issue raised by LGE is essentially one of contract interpretation: whether the Term Provision provided for the expiration of the 2011 NDA/Agreement on June 13, 2012. A court may resolve contractual claims on a motion to dismiss if the terms of the contract are unambiguous. *Bedrosian v. Tenet Healthcare Corp.*, 208 F.3d 220 (9th Cir. 2000). However, what the parties intended by an ambiguous contract is a factual determination, *United States v. Plummer*, 941 F.2d 799, 803 (9th Cir. 1991), and thus "[w]here the language 'leaves doubt as to the parties' intent,' the motion to dismiss must be denied." *Monaco v. Bear Stearns Residential Mortg. Corp.*, 554 F. Supp. 2d 1034, 1040 (C.D. Cal. 2008) (quoting *Consul Ltd. v. Solide Enteres., Inc.*, 802 F.2d 1143, 1149 (9th Cir. 1986)); *see also Trustees of Screen Actors Guild-Producers Pension and Health Plans v. NYCA, Inc.*, 572 F.3d 771, 777 (9th Cir. 2009).

For the below reasons, the Court agrees with Alta that the 2011 NDA's Term Provision is ambiguous as to when the Agreement, and therefore LGE's additional three-year obligation, ended. *See* Opp'n at 6–13. Therefore, the motion to dismiss the DTSA and CUTSA claims on this ground must be denied.

The first sentence of the Term Provision plainly provides for a Disclosure Period that was

Case No. 18-CV-00404-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

to start at the June 13, 2011 execution of the 2011 NDA and then continue for one year. However, the second sentence in the Term Provision — the sentence at issue — is unclear. It provides only that "[t]he parties' duty to hold in confidence Confidential Information that was disclosed during the Term *shall survive for an additional three (3) years after the expiration of this Agreement*." Compl. Exh. A ¶ 5 (emphasis added). Therefore, what is unclear in this provision is the definition of "expiration of this Agreement."

There are no provisions in the 2011 NDA supplying a definition of the phrase "expiration of this Agreement." Nothing in the 2011 NDA states that the 2011 NDA expires, let alone when expiration is intended to occur.

Moreover, a review of the other 2011 NDA provisions further confirms that the meaning of the phrase "expiration of this Agreement" is ambiguous. The "Return of Confidential Information" provision (Section 6), for instance, provides that LGE had to return the Confidential Information upon the earlier of "(i) the completion or termination of the dealings between the parties contemplated hereunder; (ii) the termination of this Agreement; or (iii) at such time as the disclosing party may so request; provided, however, that the receiving party may retain such of its documents as is necessary to enable it to comply with its document retention policies." Compl. Exh. A ¶ 6. This provision contemplates that "the completion or termination of the dealings between the parties" and the "termination of this Agreement" would be two distinct events. *See id.* This observation further supports the Court's determination that the 2011 NDA's language leaves doubts as to the parties' intent, such that the motion to dismiss must be denied. *See Monaco*, 554 F. Supp. 2d at 1040.

Thus, while LGE is correct that a court may determine rights at the motion to dismiss stage for an unambiguous contract, *see, e.g. Salesbrain, Inc. v. AngelVision Tech.*, No. C 12-05026 LB, 2013 WL 1191236, at *12–*13 (N.D. Cal. Mar. 21, 2013), this is not such a situation. The 2011 NDA between Alta and LGE is not like the NDA in *Salesbrain* because there it was "both true and uncontested that the NDA's confidentiality, non-use, and non-disclosure obligations expired on April 8, 2010, two years after [the party] signed the NDA." *Id.* Here, however, the NDA 2011's

Case No. 18-CV-00404-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

Term Provision is ambiguous on its face. Thus, the Court must refrain from deciding this issue on a Rule 12(b)(6) motion. *See, e.g.*, *Monaco*, 554 F. Supp. 2d at 1040 ("Where the language 'leaves doubt as to the parties' intent,' the motion to dismiss must be denied." (citation omitted)); *Bedrosian*, 208 F.3d at 220 ("Resolution of contractual claims on a motion to dismiss is proper if the terms of the contract are unambiguous."). The Court rejects LGE's argument regarding the 2011 NDA's expiration at this stage.

Moreover, even if the 2011 NDA clearly did expire on June 13, 2012, it is not immediately clear that fact would bar Alta from alleging a claim under the DTSA or the CUTSA. As discussed, the DTSA/CTSA "trade secret" inquiry asks whether the owner took "reasonable measures" to keep the information secret. *See* 18 U.S.C. § 1839(3); Cal. Civ. Code § 3426.1(d). Thus, the presence of a contract is an allegation that may support a finding of reasonable measures, but an expired contract does not automatically render any information incapable of receiving trade secretion protection. This was partially why the court in *BladeRoom Grp. Ltd. v. Facebook, Inc.* rejected defendant's motion in limine argument that because the parties' NDA expired, "'the information was no longer "secret" [and] [defendant] was under no obligation to treat it as confidential,'" and therefore, defendant could not "be held liable for misappropriation based on any subsequent conduct." No. 5:15-cv-01370-EJD, 2018 WL 1569703, at *7 (N.D. Cal. Mar. 30, 2018). Instead, the court said "as to the *tort* for trade secret misappropriation, the fact that a *contract* expired does not automatically render any information incapable of receiving trade secret protection; rather, it is one fact the jury may consider to determine whether or not Plaintiffs adequately protected their trade secrets subsequent to the termination." *Id.*

Moreover, *Silicon Image, Inc.*, does nothing to change this conclusion. In *Silicon Image, Inc.*, the court only noted that there was evidence that the plaintiff itself as well as its customers had disregarded confidentiality designations under the NDAs. Thus, the evidence raised questions about whether plaintiff's "reliance on NDAs to protect its own confidential information was reasonable at the time the alleged copying occurred, in 2005 and 2006." 2008 WL 166950, at *17. The *Silicon Image, Inc.* decision had nothing to do with the duration of an NDA.

1    Therefore, at the motion to dismiss stage, the Court concludes that the contract is

2    ambiguous. LGE's motion to dismiss on this basis must be DENIED.[1]

3        **2.  Alleging Trade Secret Misappropriation with Particularity**

4        LGE's second argument against Alta's DTSA and CUTSA claims is that Alta's Complaint

5    fails to describe the trade secrets that were allegedly misappropriated with sufficient particularity.

6    Mot. at 10–12. Alta responds that it is not required to plead its trade secrets with "particularity,"

7    and that in any event, the facts Alta alleges permit LGE to determine the boundaries of the trade

8    secrets as well as create an inference of misappropriation. Opp'n at 13–18. The Court considers

9    these arguments below.

10       To reiterate, under the DTSA and the CUTSA, a plaintiff must allege (1) that it is the

11   owner of a trade secret; (2) that the defendant misappropriated the trade secret; and (3) that it was

12   damaged by the defendant's actions. *See Space Data Corp.*, 2017 WL 5013363, at *2. Courts have

13   held that the DTSA and the CUTSA share the same pleading requirements for the identification of

14   trade secrets. "[A] plaintiff need not 'spell out the details of the trade secret.'" *Autodesk, Inc. v.*

15   *ZWCAD Software Co.*, 2015 WL 2265479, at *5 (N.D. Cal. May 13, 2015). However, the plaintiff

16   must "describe the subject matter of the trade secret with sufficient particularity to separate it from

17   matters of general knowledge in the trade or of special persons who are skilled in the trade, and to

18   permit the defendant to ascertain at least the boundaries within which the secret lies." *Vendavo,*

19   *Inc. v. Prixe f(x) AG*, No. 17-cv-06930-RS, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018)

20   (citations omitted); *Space Data Corp*, 2017 WL 5013363, at *2 (same).

21       Reviewing the Complaint here, the Court finds that Alta alleges its trade secrets with

22   sufficient particularity such that LGE can "ascertain at least the boundaries within which the secret

23

24   ───────────────

     [1] The Court notes that Alta raises for the first time in its Opposition the argument that Alta alleged
25   a continuous course of misappropriation by LGE from 2011 to the present because LGE *acquired*
     Alta's trade secrets by fraudulently inducing Alta to enter into the 2011 NDA. Opp'n at 6. This
26   theory, however, is absent from the Complaint. The Court therefore need not consider it further.
     *See, e.g.*, *SriCom, Inc. v. EbisLogic, Inc.*, No. 12-CV-00904-LHK, 2012 WL 4051222, at *6 (N.D.
27   Cal. Sept. 12, 2012) ("[A]llegations raised for the first time in the briefing are not considered in
     determining the sufficiency of the complaint." (citation omitted)).

28

lies." *Vendavo, Inc*, 2018 WL 1456697, at *4 (citations omitted). Alta alleges the exact technology

in question: thin-film GaAs solar technology. *See, e.g.*, Compl ¶ 18. Alta also alleges the

following:

> The Confidential Information and trade secrets imparted by Alta to LG[E] includes Alta's Methods of: high throughput thin-film deposition; epitaxial lift-off of the thin-film; and GaAs substrate maintenance and re-use. It includes confidential cost analysis; proofs and tests of manufacturing concepts and techniques; tool roadmaps; manufacturing process flows; and identification of equipment and equipment vendors; and information related to the foregoing.

Compl. ¶ 55. Additionally, attached to the 2011 NDA as "Appendix A" is a schedule

describing the type of Confidential Information the parties contemplated under the

agreement. *See* Compl. Exh. A, Appendix A. The schedule described the Confidential

Information as follows:

1) CVD technology and its commercial viability
   - CVD (Alta 2T) chamber scheme
   - growth rate
   - thin film quality
   - uniformity
   - gas utilization efficiency
   - scalability and short cycle time feasibility
2) ELO technology and water reusability
   - ELO reproducibility for 100x100mm2 samples
   - GaAs reusability data (actual and estimate)
3) Cell technology that resulted in 26.8% efficiency
   - device structure (e.g. thin film structure, passivation, anti-reflection coating, surface texturing)
   - efficiency distribution per process batch
4) Quality control method
   - film quality
   - ELO quality
   - device characteristics (e.g. efficiency, reliability)
5) LCOE estimate basis
   - lifetime
   - yield
   - GaAs reusability
   - throughput

*Id*; *see also* Compl. ¶¶ 95, 105. Moreover, the Court agrees with Alta that because Alta's claims

14

are based on the Confidential Information exchanged pursuant to the 2011 NDA, "LGE can hardly claim it is unable to determine what trade secrets Alta gave LGE in 2011 and 2012." Opp'n at 14.

Alta's allegations look more like the allegations in *TMX Funding, Inc. v. Impero Tech. Inc.*, where the court found sufficient plaintiff's trade secret allegations when plaintiff alleged nine broad categories of trade secret information, including, among other things: "[i]ts software, source codes, data, formulas, and other technical information developed as proprietary and confidential products and services;" "[i]ts business methods and marketing plans, such as prospective customer and sales methods for attracting and retaining customers;" and "[i]ts product information, including, but not limited to, cost, pricing, margin data and other financial information." No. C 10-00202 JF (PVT), 2010 WL 2509979, at *3 (N.D. Cal. June 17, 2010).

Furthermore, Alta's allegations are more specific than the trade secrets identified in *Space Data Corp*, where the court found insufficient the plaintiff's trade secrets allegations when the "FAC and Exhibits D and E thereto merely provide[d] a high-level overview of Space Data's purported trade secrets," such as "data on the environment in the stratosphere" and "data on the propagation of radio signals from stratospheric balloon-based transceivers." 2017 WL 5013363, at *2.

The case cited by Alta, *Rockwell Collins, Inc. v. Wallace*, No. SACV 17-01369 AG (JCGx), 2017 WL 5502775 (C.D. Cal. Nov. 10, 2017), further supports the Court's finding that Alta's allegations are sufficient. Opp'n at 13. The *Rockwell Collins* court found that Federal Rule of Civil Procedure 9's heightened pleading standard does not apply to trade secrets cases, that Rule 8 does not have a particularity requirement, and that California Civil Procedure Code § 2019.210 has no place at the pleading stage. *See* 2017 WL 5502775, at *2; *see also Vendavo*, 2018 WL 1456697, at *4 n.3 ("On reply, Price f(x) invokes California Code of Civil Procedure § 2019.210, a state procedural rule requiring a plaintiff to 'identify the trade secret with reasonable particularity' prior to commencing discovery. That provision does not create a pleading requirement even in state court, it certainly does not govern the adequacy of the complaint in federal court. If anything, it supports the notion that plaintiffs cannot be expected to disclose

Case No. 18-CV-00404-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

1   publicly in the complaint the very secrets they are seeking to protect.").

2       In sum, Alta's allegations give both the Court and LGE notice of the boundaries within

3   which the trade secrets lie. *Space Data Corp.*, 2017 WL 5013363, at *2. Thus, the Court

4   concludes that the allegations in the Complaint are sufficient to put LGE on notice of the trade

5   secrets.

6       The Court turns next to the sufficiency of the allegations of misappropriation. Under the

7   DTSA and CUTSA, "misappropriation" means either the "(1) [a]cquisition of a trade secret by

8   another person who knows or has reason to know that the trade secret was acquired by improper

9   means;" or the "(2) [d]isclosure or use of a trade secret of another without express or implied

10  consent." 18 U.S.C. § 1839(5); Cal. Civ. Code § 3426.1(b). Alta brings its DTSA and CUTSA

11  claims on the basis that LGE allegedly "used" Alta's trade secrets.[2]

12      In *Space Data Corp.*, the court found plaintiff's misappropriation allegations to be

13  insufficient when plaintiff alleged only that "[d]efendants have engaged in other business activity

14  based on Space Data's confidential trade secret information, which conflict with their legal

15  obligations to Space Data," and when plaintiff did not support those "conclusory allegations" with

16  adequate "factual allegations." 2017 WL 5013363, at *2. By contrast, in *Autodesk, Inc.*, the court

17  found the misappropriation claim adequate when plaintiff alleged that "ZWCAD+ was 'built by

18  someone with improper and illegal access to AutoCAD source code,' that its code had been

19  'stolen' and that, without [plaintiff] Autodesk's consent, 'Defendants acquired, disclosed and/or

20  used' Autodesk's trade secret information 'through improper means.'" 2015 WL 2265479, at *6.

21  The *Autodesk* court noted that "there is no requirement that Autodesk plead exactly how

22  Defendants 'improperly obtained [or used] the alleged trade secret.'" *Id.* (alteration in original).

23  The *Autodesk* court continued, "as 'discovery has not yet commenced,' 'it would be unreasonable

24  to require' a plaintiff to demonstrate 'the precise ways in which Defendants may have used [their]

25  _____

26  [2] As discussed above in Section III.A.1., Alta's Complaint alleges only a misappropriation theory
    of use. Despite this, Alta tries to raise a new theory in its Opposition: misappropriation by
27  acquisition and a continuous course of misappropriation. *See, e.g.*, Opp'n at 6. The Court need not
    consider theories absent from the Complaint. *See, e.g.*, *SriCom, Inc.*, 2012 WL 4051222, at *6.

28  

16

trade secrets, given that Defendants are the only ones who possess such information.'" *Id.*

Here, the Court again agrees with Alta that its Complaint is not "devoid of any details" regarding LGE's use of trade secrets. Alta sufficiently alleges facts which give rise to the inference that LGE is using Alta's trade secrets, including:

- LGE's solar cell structure uses a graded layer just like the one used by Alta because LGE is using manufacturing techniques that were disclosed to LGE under the 2011 NDA (Compl. ¶¶ 66–67);

- LGE filed a patent application covering technology similar to Alta's high-throughput manufacturing tool and describing a tool that has similarities to Alta's MOCVD tool that Alta showed to LGE under the 2011 NDA, including the manner that Alta's technology represents a departure from conventional methods and processes typically used in manufacturing in other technology sectors (*Id.* ¶¶ 68–70);

- Alta learned of a LGE poster that describes a solar cell structure that is similar to a proprietary Alta product and suggests manufacturing techniques that implicate Alta's intellectual property (*Id.* ¶ 71);

- LGE did not return to Alta the Confidential Information that LGE had received from Alta as required under the 2011 NDA, including the results of LGE's testing, analysis, use and study of Alta's Confidential information (*Id.* ¶¶ 59–63, 77); and

- Materials that LGE did return to Alta discussed a plan — in LGE's own words —"for LG[E] in-house development of Alta Device technology" (*Id.* ¶ 16).

LGE argues that these allegations are insufficient because they allege only "similarities" between Alta and LGE's technology. *See* Mot. at 11 n.7. However, in *E. & J. Gallo Winery*, the court held allegations of similarities to be sufficient when accompanied by allegations of exactly how defendants improperly obtained the alleged trade secrets. *E. & J. Gallo Winery v. Instituut Voor Landbouw—En Visserijonderzoek*, No. 1:17-cv-00808-DAD-EPG, 2018 WL 2463869, at *7 (E.D. Cal. June 1, 2018). In *E. & J. Gallo Winery*, the improper access was given pursuant to a non-disclosure agreement. *Id.*

Case No. 18-CV-00404-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

Here, Alta alleges exactly how LGE gained access. The allegations include that LGE was interested in and eager to explore Alta's "disruptive" technology in 2011–2012, Compl. ¶¶ 12–14, and that the parties executed an NDA in 2011, *id.* ¶ 14. Convinced of the technical superiority and commercial feasibility of Alta's technology, LGE proceeded to obtain details about Alta's technology under the NDA after LGE had stated a plan for developing Alta's technology "in-house." *Id.* ¶¶ 14–16, 50–55. After obtaining Alta's trade secrets during the 2011–2012 time period, LGE subsequently came back to Alta in 2013–2014 to ask for samples of Alta's solar cells. *Id.* ¶ 64. Then LGE began producing technology and a manufacturing tool similar to Alta's. *Id.* ¶¶ 65–72.

Moreover, Alta made allegations that LGE was "building upon" Alta's technology to make LGE's own technology "in house." *See, e.g.*, Compl. ¶ 64. Such allegations also state a claim of use misappropriation. *See, e.g.*, *Gatan, Inc. v. Nion Co.*, No 15-cv-01862-PJH, 2017 WL 1196819, at *6 (N.D. Cal. Mar. 31, 2017) (finding sufficient the allegations of misappropriation when the allegations included that the defendant was subject to an agreement and had a duty to maintain confidentiality of the trade secrets, yet the defendant "built upon or modified" the trade secrets to develop defendant's own technology).

Thus, the Court rejects LGE's argument that Alta's DTSA and CUTSA claims should be dismissed for failure to allege the trade secrets with particularity. The Motion to Dismiss the DTSA and CUTSA claims is therefore DENIED.

## B. Breach of Contract Claim

Alta's claim for breach of contract rests on two different breach theories: (1) LGE failed to return and redeliver to Alta all of the Confidential Information provided by Alta to LGE pursuant to the 2011 NDA; and (2) LGE used "Alta's Confidential Information for purposes not authorized by the 2011 NDA." Compl. ¶ 116. LGE argues that Alta has failed to state a claim for breach of contract under both theories. The Court explores LGE's arguments as to each breach theory.

### 1. Alta's Claim for Breach of Contract Based on LGE's Failure to Return

LGE argues that "[t]o the extent that Alta's claim for breach of contract is based on LGE's

18

alleged failure to return information disclosed under the 2011 NDA," it is barred by the statute of limitations. Mot. at 12–14.

California law provides for a four-year statute of limitations for breach of contract claims. *See* Cal. Code. Civ. P. § 337. However, California courts recognize a "discovery rule" that "a cause of action accrues when the plaintiff discovers or could have discovered, through the exercise of reasonable diligence, all of the facts essential to his cause of action." *Perez-Encinas v. AmerUs Life Ins. Co.*, 468 F. Supp. 2d 1127, 1134 (N.D. Cal. July 26, 2006) (citing *April Enters., Inc. v. KTTV*, 147 Cal. App. 3d 805, 826 (1983)). Further, California courts have identified three appropriate applications of the discovery rule in the breach of contract context: "(1) '[t]he injury or the act causing the injury, or both, have been difficult for the plaintiff to detect'; (2) 'the defendant has been in a far superior position to comprehend the act and the injury'; and (3) 'the defendant had reason to believe the plaintiff remained ignorant he had been wronged.'" *Id.* at 1134–35 (quoting *Gryczman v. 4550 Pico Partners, Ltd.*, 107 Cal. App. 4th 1, 5 (2003)).

Per Section 6 of the 2011 NDA, LGE was required to return the Confidential Information "upon the earlier of (i) the completion or termination of the dealings between the parties contemplated hereunder; (ii) the termination of this Agreement; or (iii) at such time as the disclosing party may so request." Compl. Exh. A ¶ 6. Thus, the questions this Court must answer include at what time were each of Section 6's subsections ((i), (ii), (iii)) triggered, and which of the subsections were the "earlier of" the three subsections.

LGE argues, as it did against Alta's DTSA and CUTSA claims, that pursuant to the 2011 NDA's terms, subsection (ii), the "termination of the Agreement," occurred on June 13, 2012. Mot.12. LGE argues that subsection (i), "the completion or termination of the dealings between the parties" also occurred on June 13, 2012. *Id.* LGE maintains that as to subsection (iii), Alta alleges that Alta requested return of the Confidential Information in a letter on January 9, 2017. *Id.* Therefore, according to LGE, under subsections (i) and (ii), June 13, 2012 is the "earlier of" the triggering dates set forth in the 2011 NDA such that Alta's breach of contract claim based on failure to return accrued on that date. *Id.* at 12–13. Given this, LGE argues that Alta's breach of

19

contract claim based on LGE's failure to return the Confidential Information expired pursuant to the four-year statute of limitations on June 13, 2016, two years before Alta filed the present action on January 18, 2018.

However, as already discussed in subsection III.A.1., the Court declines to read into the contract an expiration date of June 13, 2012 given the ambiguity of the 2011 NDA's Term Provision.[3] Thus, the Court rejects LGE's subsection (ii) "termination of the Agreement" argument. However, Alta effectively admits that: (1) subsection (i) "the completion or termination of the dealings between the parties," refers to the end of the "Disclosure Period," which was June 13, 2012; (2) this subsection would be the "earlier of" the other subsections; and (3) thus LGE's obligation to return was triggered on June 13, 2012. *See* Opp'n at 20. Instead of contesting that subsection (i) supplies the "earlier of" date, Alta contends first that the discovery rule saves its claim, and that in any event, LGE's failure to return and improper use breaches are a single continuing violation such that the statute of limitations does not bar Alta's breach of contract claim based on a failure to return. The Court disagrees.

First, applying the discovery rule to save Alta's breach of contract claim based on a failure to return would be improper. Normally, "[a] cause of action for breach of contract accrues at the time of the breach of contract, and the statute of limitations begins to run at that time regardless of whether any damage is apparent or whether the injured party is aware of his right to sue." *Perez-Encinas*, 468 F. Supp. 2d at 1134. The discovery rule comes in to play only "where it is manifestly unjust to deprive plaintiffs of a cause of action before they are aware that they have been injured." *Id.* (citing *Moreno v. Sanchez*, 106 Cal. App. 4th 1415, 1423 (2003)). In *April Enters., Inc.*, for instance, the California Court of Appeal held that, in contract actions, the discovery rule could be applied to "breaches which can be, and are, committed in secret and, moreover, where the harm flowing from those breaches will not be reasonably discoverable by plaintiffs until a future time." 147 Cal. App. 3d at 832. However, the Court agrees with LGE that here, "Alta's claim for breach

---

[3] Moreover, such a reading would also render any distinction between subsection (i) and (ii) of Section 6 of the 2011 NDA meaningless.

based on failure to return [the confidential] information is, simply, not a breach that can be committed in secret or as to which information is asymmetrically available only to LGE." Reply at 13. Alta admits that LGE's duty to return was triggered by subsection (i) at the end of the Disclosure Period on June 13, 2012. Opp'n at 20. Alta therefore knew as of that date whether or not LGE had met its obligation to return to Alta the disclosed information, "regardless of whether any damage" as a result was then "apparent." *Perez-Encinas*, 468 F. Supp. 2d at 1134.

Moreover, the Court rejects Alta's attempts to allege that LGE engaged in some sort of "continuous breach" by LGE's failure to return and improper use. *See* Opp'n at 20. The case cited by Alta, *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1192 , 1197–98 (2013), for the proposition that the continuing violation doctrine would treat all of LGE's conduct, from the alleged failure to return documents to the alleged misuses, as a single cause of action that does not accrue until the very last act, has no application here. The continuing violation doctrine is applicable when the complaint features "[a]llegations of a pattern of reasonably frequent and similar acts." *Aryeh*, 55 Cal. 4th at 1198. As LGE aptly observes, the cases cited in *Aryeh* all involved a series of acts that only give rise to a claim in the aggregate. *See, e.g.*, *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1058 (2005) (stating that "plaintiff alleges a retaliatory course of conduct rather than a discrete act of retaliation"); *Richards v. CH2M Hill, Inc.*, 26 Cal. 4th 798, 821 (2001) (viewing "the failure over time to reasonably accommodate a disabled employee as a single course of conduct"); *Komarova v. Nat'l Credit Acceptance, Inc.*, 175 Cal. App. 4th 324, 345 (2009) (holding that the violations that occurred during the continuing course of making harassing phone calls were not barred by the statute of limitations). By contrast here, Alta's claims for breach involve two distinct acts: failure to return Confidential Information pursuant to the 2011 NDA and misuse of information. Thus, the Court rejects Alta's attempt to assert the continuing violation doctrine.

In sum, the Court finds that Alta's breach of contract claim based on failure to return Confidential Information accrued pursuant to Section 6 subsection (i) of the 2011 NDA at the end of the Disclosure Period, June 13, 2012. The Court rejects Alta's discovery rule and continuing

Case No. 18-CV-00404-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

violation arguments. Therefore, Alta's breach of contract claim based on failure to return Confidential Information expired pursuant to the four year statute of limitations on June 13, 2016. In light of this, the Court GRANTS LGE's motion to dismiss Alta's breach of contract claim based on LGE's failure to return information. Because amendment would be futile, the motion to dismiss this claim is granted with prejudice. *See Leadsinger, Inc.*, 512 F.3d at 532.

### 2. Alta's Claim for Breach of Contract Based on LGE's Misuse

Alta's second theory for breach of contract is that LGE misused its "Confidential Information for purposes not authorized by the 2011 NDA." Compl. ¶ 116. LGE argues, like it did as to Alta's trade secret claims, that to the extent that Alta's claim for breach of contract is based on LGE's alleged unauthorized use, "LGE's 'duty to hold in confidence' obligation under the 2011 NDA" expired on June 13, 2015. Mot. at 13. LGE again asserts "there was no 'Confidential Information' under the 2011 NDA following that date." *Id.* at 14. Therefore, according to LGE, because "Alta's Complaint only alleges specific acts of unauthorized use occurring after June 13, 2015, Alta's Complaint fails to state a claim." *Id.*

The Court disagrees. As already discussed in subsection III.A.1., the Court finds that the Term Provision is ambiguous as to the question of when the 2011 NDA, and therefore LGE's obligation, ended. *See, e.g.*, *Monaco*, 554 F. Supp. 2d at 1040 ("Where the language 'leaves doubt as to the parties' intent,' the motion to dismiss must be denied." (citation omitted)); *Bedrosian*, 208 F.3d at 220 ("Resolution of contractual claims on a motion to dismiss is proper if the terms of the contract are unambiguous."). Thus, the Court must reject LGE's argument regarding the expiration of LGE's "duty to hold in confidence" under the 2011 NDA at this stage. The Court DENIES LGE's Motion to Dismiss Alta's breach of contract claim based on misuse.

### C. UCL Violation Claim

Plaintiff's fourth claim is brought under the UCL. Compl. ¶¶ 119–24. The UCL creates a cause of action for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent. Bus. & Prof. Code. § 17200. Each "prong of the UCL [provides] a separate and distinct theory of liability." *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007). Alta's UCL

22

claim invokes all three prongs of the UCL. *See* Compl. ¶ 119. Specifically, Alta's Complaint as to

its UCL claim incorporates by reference all preceding allegations of the Complaint and provides

that:

> 120. Defendant LG[E] engaged in unlawful, unfair, and/or fraudulent business acts
> and practices. Such acts and practices include, but are not limited to,
> misappropriating Alta Devices' proprietary, trade secret and Confidential
> Information.
>
> 121. Defendant LG[E]'s business acts and practices were unfair in that the
> substantial harm suffered by Alta Devices outweighs any justification that
> defendant LG[E] may have for engaging in those acts and practices.
>
> 122. Defendant LG[E]'s business acts and practices were unlawful as described
> above.
>
> 123. Defendant LG[E]'s business acts and practices were fraudulent in that a
> reasonable person would likely be deceived by their material misrepresentations
> and omissions. Defendant LG[E] has acquired and used Alta Devices' proprietary,
> trade secret and Confidential Information through material misrepresentations and
> omissions. One such material concealment and omission occurred when LG[E]
> made to Alta a non-binding investment indication of $5 million for the "Series D"
> offering, subject to due diligence, while concealing that the due diligence was being
> performed for LG[E]'s own in-house development of Alta technology, and that
> LG[E] planned on competing with Alta using the information gained under the
> 2011 NDA. Another fraudulent and deceptive representation was LG[E]'s promise
> in the NDA only to use Confidential Information for the business relationship of
> and between Alta and LG[E]. In 2013 and 2014, LG[E] fraudulently obtained
> sample(s) of Alta materials for the falsely claimed purposes of evaluating the
> sample(s) as a potential purchaser or investor, not, as was the case, as a competitor
> to reverse engineer.
>
> 124. Alta Devices has been harmed as a result of Defendant LG[E]'s unlawful,
> unfair, and fraudulent business acts and practices. Alta Devices is entitled to (a)
> recover restitution, including without limitation, all benefits that Defendant
> received as a result of their unlawful, unfair, and fraudulent business acts and
> practices and (b) and injunction restraining Defendant from engaging in further acts
> of unfair competition.

Compl. ¶¶ 119–24.

LGE argues that Alta's Complaint fails to state a UCL violation pursuant to Bus. & Prof.

Code § 17200 because Alta's UCL claim is preempted by the CUTSA's savings clause. Mot. at 14

(citing Cal. Civ. Code. § 3426.7).

23

"Under California law, CUTSA provides the exclusive civil remedy for conduct falling within its terms and supersedes other civil remedies based upon misappropriation of a trade secret. It therefore supersedes claims—including Section 17200 claims—*based on the same nucleus of facts as trade secret misappropriation.*" *Waymo LLC v. Uber Tech., Inc.*, 256 F. Supp. 3d 1059, 1062 (N.D. Cal. 2017) (citations omitted) (emphasis added); Cal. Civ. Code. § 3426.7; *see also SunPower Corp. v. SolarCity Corp.*, No. 12-CV-00694-LHK, 2013 WL 6160472, at *3 (N.D. Cal. Dec. 11, 2012) ("If there is no material distinction between the wrongdoing alleged in a [C]UTSA claim and that alleged in a different claim, the [C]UTSA claim preempts the other claim.") (citations omitted). The savings clause does not affect "contractual remedies" and "civil remedies" "that are not based upon misappropriation of a trade secret." *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 233 (2010), *disapproved on other grounds by Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011). "At the pleadings stage, the supersession analysis asks whether, stripped of facts supporting trade secret misappropriation, the remaining factual allegations can be reassembled to independently support other causes of action." *Waymo LLC*, 256 F. Supp. 3d at 1062 (citation omitted).

The Court agrees with LGE that Alta's UCL claim is preempted to the extent that it is based on trade secret misappropriation. More specifically, the Court agrees with LGE that the entirety of Alta's allegations under the unfair and unlawful prongs, and most of the fraudulent prong allegations, are directly dependent on trade secret misappropriation. In its Complaint, for instance, Alta alleges that LGE "engaged in unlawful, unfair, and/or fraudulent business acts and practices. Such acts and practices include, but are not limited to, misappropriating [Alta's] proprietary, trade secret and Confidential Information." Compl. ¶ 120. As to the fraudulent prong, Alta additionally alleges that LGE acquired and used information gained under the 2011 NDA. *Id.* ¶ 123. The Court agrees with LGE that those allegations pertain to trade secret misappropriation and that there are no remaining factual allegations that "can be reassembled to independently support other causes of action." *Waymo LLC*, 256 F. Supp. 3d at 1062. Indeed, Alta itself provides no response to LGE's observation that "Alta's UCL allegations are dominated by trade secret

1    misappropriation." *See* Opp'n at 21–22; Reply at 114.

2        Therefore, the Court GRANTS LGE's Motion to Dismiss Alta's UCL claim. Alta's claim

3    is dismissed with leave to amend to eliminate the trade secret misappropriation allegations and to

4    set forth more clearly a basis for the UCL claim that is not preempted by CUTSA.

5        **D. Declaratory Judgment**

6        Pursuant to the Declaratory Judgment Act, "[i]n a case of actual controversy," the Court

7    "may declare the rights and other legal relations of any interested party seeking such declaration,

8    whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "This statute does not

9    create new substantive rights, but merely expands the remedies available in federal courts." *Shell*

10   *Gulf of Mexico, Inc. v. Center for Biological Diversity, Inc.*, 771 F.3d 632, 635 (9th Cir. 2014).

11   "To determine whether a declaratory judgment action presents a justiciable case or controversy,

12   courts consider 'whether the facts alleged, under all the circumstances, show that there is a

13   substantial controversy, between parties having adverse legal interests, of sufficient immediacy

14   and reality to warrant the issuance of a declaratory judgment.'" *Id.* (quoting *Md. Cas. Co. v. Pac.*

15   *Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

16       A claim for declaratory relief may be "unnecessary where an adequate remedy exists under

17   some other cause of action." *Reyes v. Nationstar Mortg. LLC*, No. 15-CV-01109-LHK, 2015 WL

18   4554377, at *7 (N.D. Cal. July 28, 2015) (quoting *Mangindin v. Wash. Mut. Bank*, 637 F. Supp.

19   2d 700, 707 (N.D. Cal. 2009)). However, "[t]he existence of another adequate remedy does not

20   preclude a declaratory judgment that is otherwise appropriate." Fed. R. Civ. P. 57. Ultimately, a

21   critical question is whether the declaratory relief "will serve a useful purpose in clarifying and

22   settling the legal relations in issue." *McGraw-Edison Co. v. Preformed Line Prods. Co.*, 362 F.2d

23   339, 342 (9th Cir. 1966).

24       Alta is seeking a "judicial determination of the parties' respective rights and duties [under

25   the 2011 NDA], and a declaration affirming that [LGE] is breaching its duties under the NDA and

26   using Confidential Information of Alta in such breach." Compl. ¶ 129. Alta further asserts that a

27   judicial determination is necessary to prevent LGE's "unjustified misappropriation of trade secrets

28
                                            25

and breach of contract." *Id.* ¶ 130. LGE asserts three arguments for dismissal of Alta's claim for declaratory relief: (1) preemption; (2) the four-year statute of limitations for Alta's breach of contract claim; and (3) redundancy of relief. Mot. at 15–16. The Court considers each argument.

First, LGE argues that "[t]o the extent that Alta's declaratory judgment claim addresses LGE's purported use of Alta's alleged trade secrets, it is 'based on the same nucleus of facts as trade secret[s] misappropriation' and thus preempted by the CUTSA." Mot. at 16 (citing Cal. Civ. Code. § 3426.7 and *Waymo*, 256 F. Supp. 3d at 1062). Alta does not dispute much of LGE's first argument. Instead Alta argues that the "CUTSA does not limit remedies not based on trade secrets." Opp'n at 22 (citing Cal. Civ. Code. § 3426.7). Alta states first that "Alta seeks a declaration of the parties' rights and duties under the NDA," and that the "CUTSA does not displace any of Alta's contractual remedies, including for declaratory relief, based on the NDA" because "[c]ontract remedies are expressly exempted from any effect of [the] CUTSA." *Id.* (citing Cal. Civ. Code. § 3426.7). Alta argues second that Alta may seek a declaration as to LGE's unfair business acts and practices related to its UCL claim specifically regarding Alta's rights for the samples that LGE fraudulently obtained from Alta because "LGE's reverse engineering of [the] samples would not be misappropriation." *Id.*

The Court agrees with Alta that the CUTSA does not preempt Alta's breach of contract claim, and therefore does not preempt Alta's declaratory judgment claim to the extent that it relies on the breach of contract claim. *See* Cal. Civ. Code. § 3426.7 ("This title does not affect (1) contractual remedies, whether or not based upon misappropriation of a trade secret."). However, the Court agrees with LGE that to the extent the declaratory judgment claim is based on the same nucleus of facts as trade secret misappropriation, the declaratory judgment claim is preempted by the CUTSA. *See Waymo*, 256 F. Supp. 3d at 1062 ("At the pleadings stage, the supersession analysis asks whether, stripped of facts supporting trade secret misappropriation, the remaining factual allegations can be reassembled to independently support other causes of action."). The Court therefore GRANTS LGE's Motion to Dismiss the declaratory judgment claim to the extent it is based on Alta's UCL claim. However, the Court grants leave to amend to eliminate the trade

26

secret misappropriation allegations and to set forth more clearly a basis for a declaration as to

LGE's unfair, unlawful, or fraudulent business acts and practices. *See* III.C.

Second, LGE argues that "to the extent that Alta's claim for declaratory relief is based

upon LGE's failure to return information under the 2011 NDA, it is barred by the four-year statute

of limitations." Mot. at 16 (citing Cal. Code Civ. P. §337). Having found Alta's breach of contract

claim based on a failure to return Confidential Information to be time barred as discussed in

subsection III.B.1, the Court agrees. The Court therefore GRANTS LGE's Motion to Dismiss

Alta's declaratory judgment claim with prejudice to the extent it is based upon LGE's failure to

return Confidential Information under the 2011 NDA.

Third, LGE argues that Alta's claim for declaratory judgment should fail in its entirety

because it is "entirely redundant of the relief sought under its claims." Mot. at 16. The Court

disagrees. Although some courts have said that "[a] claim for declaratory relief is unnecessary

where an adequate remedy exists under some other cause of action," *see, e.g.*, *Mangindin*, 637 F.

Supp. 2d at 707, Federal Rule of Civil Procedure 57 specifically provides that "[t]he existence of

another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate."

The critical question is whether the declaratory relief "will serve a useful purpose in clarifying and

settling the legal relations in issue." *McGraw-Edison Co.*, 362 F.2d at 342.

The Court declines to dismiss the declaratory judgment claim in its entirety because the

Court finds that a declaratory judgment would serve a useful purpose. The declaratory relief and

other claims seek different relief. *See In re Yahoo! Inc. Customer Data Security Breach Litig.*, 313

F. Supp. 3d 1113, 1139 (N.D. Cal. 2018) ("Based on the pleadings, the contract claims and the

declaratory relief claim seek different relief. The contract claims request retrospective relief—

namely, damages—for the past harms that Plaintiffs have suffered."). Although Alta's DTSA,

CUTSA, and UCL claims seek retrospective relief (damages) for the past harm that Alta suffered,

the declaratory relief claim seeks a declaration of the parties' *prospective* rights and duties under

the NDA, as well as injunction going forward. *See* Opp'n at 23 *see also* Compl. ¶ 130 (seeking a

declaration to prevent further misappropriation and breaches); Compl. at 28 (seeking an

"injunction against future harm by disclosure or adverse use."). Accordingly, the Court DENIES LGE's motion to dismiss the declaratory judgment claim in its entirety.

## IV. CONCLUSION

For the foregoing reasons, the Court rules as follows:

- The Motion to Dismiss the DTSA claim is DENIED;
- The Motion to Dismiss the CUTSA claim is DENIED;
- The Motion to Dismiss the breach of contract claim based on failure to return Confidential Information is GRANTED with prejudice;
- The Motion to Dismiss the breach of contract claim based on misuse of the Confidential Information is DENIED;
- The Motion to Dismiss the UCL claim is GRANTED with leave to amend;
- The Motion to Dismiss the declaratory judgment claim in so far as it relies on Alta's breach of contract claim based on failure to return Confidential Information is GRANTED with prejudice;
- The Motion to Dismiss the declaratory judgment claim in so far as it relies on Alta's UCL claim is GRANTED with leave to amend;
- The Motion to Dismiss the declaratory judgment claim in its entirety is DENIED.

If Alta elects to file an amended complaint, Alta must do so within 30 days of this Order. If Alta fails to file an amended complaint within 30 days or fails to cure the deficiencies identified in this order, the deficient claims or theories will be dismissed with prejudice. Alta may not add new causes of action or new parties without stipulation or leave of the Court.

**IT IS SO ORDERED.**

Dated: October 17, 2018

*Lucy H. Koh*
LUCY H. KOH
United States District Judge