1  John D. O'Connor (SBN 54238)
   john@joclaw.com
2  Joseph D. Calhoun (SBN 114248)
   joe@joclaw.com
3  Dirk van Ausdall (SBN 117279)
   dirk@joclaw.com
4  **O'CONNOR AND ASSOCIATES**
5  201 Mission Street, Suite 710
   San Francisco, CA 94105
6  Telephone: (415) 693-9960
   Facsimile:  (415) 692-6537
7

8  Attorneys for Plaintiff
   ALTA DEVICES, INC.
9

10                  **UNITED STATES DISTRICT COURT**

11               **NORTHERN DISTRICT OF CALIFORNIA**

12                       **SAN JOSE DIVISION**

13

14  ALTA DEVICES, INC.,                )  Case No. 5:18-cv-00404-LHK (VKD)
                                        )
15              Plaintiff,              )  **PLAINTIFF ALTA DEVICES, INC.'S**
                                        )  **OPPOSITION TO MOTION BY**
16  v.                                  )  **DEFENDANT LG ELECTRONICS, INC. TO**
                                        )  **COMPEL FURTHER IDENTIFICATION**
17  LG ELECTRONICS, INC.,               )  **OF TRADE SECRETS PURSUANT TO CAL.**
                                        )  **CODE CIV. P. § 2019.210**
18              Defendant.              )
                                        )
19                                      )
                                        )
20                                      )  Date:    December 4, 2018
                                        )  Time:   10:00 a.m.
21                                      )  Courtroom:   Courtroom 2, 5th Floor
                                        )
22                                      )
                                        )  The Honorable Virginia K. DeMarchi
23                                      )
                                        )  Complaint Filed: January 19, 2018
24  ────────────────────────────────── )

25

26           REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

27
   ───────────────────────────────────────────────────────────────
28  ALTA'S OPPOSITION TO LGE'S MOTION TO COMPEL FURTHER IDENTIFICATION
    OF TRADE SECRETS PURSUANT TO CAL. CCP §2019.210
    CASE NO. 5:18-cv-00404-LHK (VKD)

## **TABLE OF CONTENTS**

I.  INTRODUCTION ...................................................................................................... 1

II.  STATEMENT OF FACTS ......................................................................................... 2

III.  PROCEDURAL BACKGROUND TO LGE'S SECTION 2019.210 MOTION .......................... 4

IV.  LEGAL STANDARD ................................................................................................ 7

 A.  Alta Claims Only Non-Public Information About Alta's Technology
  Provided to LGE and Has Not Used Improper "Catch-All" Descriptions
  as LGE Contends. .......................................................................................... 11

 B.  LGE Has Used the Same Categories to Describe Alta's Technology
  that Are Used by Alta in Its Identification. ...................................................... 12

 C.  Alta Need Not Identify Its Trade Secrets with Any Greater Particularity
  than Is Required to Permit LGE to Defend Itself and for the Court to
  Craft Discovery ............................................................................................. 14

  1.  Alta's Technology Descriptions Sufficiently Identify Alta's
   Trade Secrets. ..................................................................................... 16

   a.  "Manufacturing Process" ........................................................ 16

   b.  "Use of Relative Terms" ......................................................... 17

   c.  "Undisclosed Relationship" .................................................... 18

   d.  "Undisclosed Compositions" ................................................... 18

   e.  "Apparatus Design" ................................................................ 18

   f.  ██████████████████████ ........................................ 19

  2.  Alta's Unique Business Information Constitutes Trade Secrets. ................ 20

 D.  Alta's Identification Is Not Required to be in the Form of a List as LGE
  Demands. ...................................................................................................... 20

 E.  Alta's Reference to Portions of LGE's Own Documents and Answers
  Provided by Alta to LGE's Questions Provides Reasonable Particularity. .......... 20

V.  CONCLUSION ...................................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*ActiveRain Corp. v. Move, Inc.*,
    No. CV 07-5037-DDP(CTx), 2008 U.S. Dist. LEXIS 126752 (C.D. Cal. May 8, 2008)..........9, 13

*ActiveRain Corp. v. Move, Inc.*,
    No. CV 07-5037-DDP(CTx), 2008 U.S. Dist. LEXIS 127718 (C.D. Cal. Apr. 29, 2008).....passim

*Advanced Modular Sputtering, Inc. v. Superior Ct.*,
    132 Cal. App. 4th 826 (2005) ...............................................................................................passim

*Agency Solutions.Com, LLC v. Trizetto Group, Inc.*,
    819 F. Supp. 2d at 1005-1015 ........................................................................................................8

*Bladeroom Grp. Ltd. v. Facebook, Inc.*,
    No. 5:15-cv-01370-EJD, 2018 U.S. Dist. LEXIS 10905 (N.D. Cal. Jan. 2, 2018).......................20

*Diodes, Inc. v. Franzen*,
    260 Cal. App. 2d 244 (1968) ...........................................................................................7, 8, 16

*I-Flow Corp. v. Apex Med. Techs., Inc.*,
    No. 07cv1200-DMS(NLS), 2008 U.S. Dist. LEXIS 44551 (S.D. Cal. May 23, 2008) ................14

*Imax Corp. v. Cinema Technologies, Inc.*,
    152 F3d 1161 (9th Cir. 1998) ..........................................................................................7, 8, 17, 18

*Lilith Games (Shanghai) Co. v. uCool, Inc.*,
    No. 15-CV-01267-SC, 2015 U.S. Dist. LEXIS 89365 (N.D. Cal. July 9, 2015)............................8

*Loop AI Labs*,
    195 F. Supp. 3d 1107 (N.D. Cal. 2016) .................................................................................12, 21

*Loop AI Labs, Inc. v. Gatti*,
    No. 15-cv-00798-HSG (DMR), 2015 U.S. Dist. LEXIS 170349 (N.D. Cal. Dec. 21, 2015)..........7

*Myrio Corp. v. Minerva Network, Inc.*,
    No. C 00-20996 RMW (PVT), 2001 U.S. Dist. LEXIS 10461 (N.D. Cal. Apr. 4, 2001) ............21

*Neothermia Corp. v. Rubicor Med., Inc.*,
    345 F. Supp.2d 1042 (N.D. Cal. 2004) ..........................................................................................6

*Perlan Therapeutics, Inc. v. Superior Court*,
    178 Cal. App. 4th 1333 (2009) ...............................................................................9, 10, 14, 20

*Phoenix Techs., Ltd. v. DeviceVM, Inc.*,
    No. 09-4697-EDL, 2010 U.S. Dist. LEXIS 24884 (N.D. Cal. Mar. 17, 2010)....................7, 10, 16

*Pixion, Inc. v. PlaceWare, Inc.*,
    421 F. Supp. 2d 1233 (N.D. Cal. 2005) ............................................................... passim

*Prolifiq Software Inc. v. Veeva Systems Inc.*,
    No. C 13-03644 SI, 2014 U.S. Dist. LEXIS 77493 (N.D. Cal., June 4, 2014) ...................... passim

*Silvaco Data Sys. v. Intel Corp.*,
    184 Cal. App. 4th 2010 (2010) ............................................................................. 19

*SocialApps, LLC v. Zynga, Inc.*,
    No. 4:11-cv-04910 YGR, 2012 WL 2203063 (N.D. Cal. June 14, 2012) ........................ 13, 14, 18

*Spring Design, Inc. v. Barnesandnoble.com, LLC*,
    No. C 09-05185 JW, 2010 U.S. Dist. LEXIS 136569 (N.D. Cal. Dec. 27, 2010) .......................... 8

*Waymo LLC v. Uber Techs., Inc.*,
    No. C 17-00939 WHA, 2018 U.S. Dist. LEXIS 8263 (N.D. Cal. Jan. 18, 2018) .......................... 18

*Whyte v. Schlage Lock Co.*,
    101 Cal. App. 4th 1443 (2002) ............................................................................ passim


**Statutes**

Cal. Code of Civ. P. §2019.210 ............................................................................ passim

Cal. Code of Civ. P. §3426.1 ............................................................................... 19

Cal. Code of Civ. P. §3426.1(d) ........................................................................... 17

1

### MEMORANDUM OF POINTS AND AUTHORITIES

2

Plaintiff Alta Devices, Inc., ("Alta") responds herein to Defendant LG Electronics, Inc.'s,

3

("LGE") Motion to Compel Alta to Identify Its Trade Secrets with Reasonable Particularity

4

(D.N. 58) ("Motion").

5

### I.    INTRODUCTION

6

Alta is the first company to create a commercially-viable manufacturing process for thin

7

film gallium arsenide ("GaAs") solar devices.  LGE sought to learn more about Alta's disruptive

8

and trade secret technology under the guise of being a potential investor conducting "due

9

diligence."  Before disclosing trade secrets to LGE, Alta and LGE entered into an NDA in which

10

both parties described the categories of confidential information Alta was to provide to LGE.

11

Thereafter, Alta provided confidential information to LGE at LGE's request, as well as in

12

responses to LGE's questions about various aspects of Alta's technology.  Alta only learned later

13

that, prior to embarking on its purported "due diligence," LGE had already developed a plan – in

14

LGE's own words – "for LG in-house development of Alta Device technology."

15

LGE has repeatedly feigned ignorance in this action as to the trade secrets Alta accuses

16

LGE of misappropriating, first on LGE's Motion to Dismiss Alta's Complaint and now in LGE's

17

Motion.  The trade secrets Alta accuses LGE of misappropriating are no mystery because they

18

are contained in the information exchanged pursuant to the NDA.  As the Court previously stated

19

in its Order on LGE's Motion to Dismiss:  "LGE can hardly claim it is unable to determine what

trade secrets Alta gave LGE in 2011 and 2012." (D.N.55 at 14:26-15:2.)

20

After LGE's Motion to Dismiss, Alta provided a further and more detailed Identification

21

of Trade Secrets Pursuant to Section 2019.210 ("Identification").  Alta's Identification explains

22

the trade secrets claimed by Alta, both by the categories used by LGE in its own documents to

23

describe them, as well as by providing further details.  The Court previously found the categories

24

used by Alta to be sufficiently particular to "give both the Court and LGE notice of the

25

boundaries within which [Alta's] trade secrets lie." (*See* D.N.55 at 13:21-15:2 and 16:2-5.)

26

Moreover, in its Identification, Alta went into much greater detail further by breaking down the

27

28

trade secrets contained within categories and providing explication as to the importance of each of Alta's trade secrets within its manufacturing process that are claimed in this action.

LGE's Motion ignores both the fact that Alta gave these trade secrets to LGE at LGE's request, as well as the totality of Alta's explanation of the flow of its manufacturing process. Instead, LGE parses Alta's Identification, treating each word and phrase as if it must convey a particularized trade secret that must be provided in list format.

Alta's Identification is sufficient to: (1) notify LGE of the trade secrets at issue so that LGE can defend itself; and (2) inform the Court so that it may craft discovery.  No more is required by California Code of Civil Procedure section 2019.210 ("Section 2019.210") when these two goals are served.  LGE's detailed arguments, as well as LGE's expert's lengthy declaration as to why Alta's trade secrets are already generally known, demonstrate that LGE is able to defend against Alta's claims.  Moreover, where, as here, credible experts disagree on whether they can understand and distinguish the trade secrets set forth, the Identification should be considered sufficient so that trade secrets discovery may commence.

Alta's extensive Identification more than adequately serves the purposes of Section 2019.210.  In considering the adequacy of a trade secret identification, "the designation should be liberally construed, and reasonable doubts about its sufficiency resolved in favor of allowing discovery to go forward." *Brescia,* 172 Cal. App. 4th at 149; *Prolifiq,* 2014 U.S. Dist. LEXIS 77493, at *7.  For all of these reasons as set forth more fully below, LGE's Motion should be denied.

## II.   STATEMENT OF FACTS

Alta was founded in Silicon Valley in 2008 and is the world's leader in the development of thin-film solar technology using GaAs for wide-spread, commercially viable use. (*See* Complaint (D.N. 1), ¶¶ 7-10.)  Alta holds the world record for photovoltaic solar energy conversion and, as of 2011, Alta had developed the world's only known manufacturing processes for GaAs solar film that had advanced to a demonstrative production line and was preparing to scale up to a large, commercially viable manufacturing facility. (*Id.*, ¶¶ 10-11.)

LGE is a Korean entity and one of the world's largest electronics manufacturers. (*Id.*, ¶ 38.)  In 2011, LGE heard about Alta's innovative technology and expressed interest to Alta in learning more details about it. (*Id.*, ¶¶ 38-40.)  In late 2011 and early 2012, knowing that Alta was seeking financing for its large-scale manufacturing plans, LGE claimed interest in making an investment conditioned on completing due diligence into Alta's manufacturing processes. (*Id.*, ¶¶ 11-13.)  Alta and LGE entered into an NDA in June 2011 (the "NDA"), and LGE sent its technologists to meet with Alta's key employees and to view Alta's facilities and prototype manufacturing apparatus. (*Id.*, ¶¶ 41 and 50.)  Under the auspices of the parties' NDA, LGE also obtained from Alta other trade secret know-how and other confidential or proprietary information through a series of written questions and answers ("Q&A") and other requests for information, including descriptions of feasibility, tests, costs, manufacturing processes and tools, techniques, bills of material, and tool utilization road maps (collectively "Confidential Information").  LGE thereby gained the benefits of years of Alta's research and development, all with an undisclosed intent to develop LGE's own manufacturing facilities using Confidential Information LGE had misappropriated from Alta. (*Id.*, ¶¶ 14-16, 19, 50, 52, and 55.)  After extracting Confidential Information from Alta, LGE then declined to make binding its previous tentative investment offer. (*Id.*, ¶ 57.)

In late 2013 and early 2014, LGE sought thin-film samples from Alta by posing as a potential customer, hiding its true intention to use the samples for reverse engineering to assist in the development of its own manufacturing process. (*Id.*, ¶ 64.)  LGE thereafter developed its manufacturing capabilities using Alta's Confidential Information, and is now producing very similar thin GaAs solar film while moving toward full-scale, mass-commercialized economical production. (*Id.*, ¶ 17.)  LGE is presently marketing its GaAs thin-film that is manufactured using Alta's Confidential Information. (*Id.*, ¶ 18.)

In 2016 and 2017, Alta began learning of LGE's misappropriation. (*Id.*, ¶ 65.)  Publications by LGE described solar cell structures manufactured using similar manufacturing techniques as Alta, and an LGE patent application appears to incorporate strikingly similar

aspects of Alta's production process and tooling. (*Id.*, ¶¶ 66-72.)  Alta sought reassurances from LGE and also demanded that LGE return Alta's Confidential Information pursuant to the NDA. (*Id.*, ¶¶ 75 and 83.)

The materials returned to Alta by LGE included LGE-created documents discussing Alta's technology and revealing that, prior to claiming to be interested in making an offer to invest in Alta, LGE had developed a plan, in LGE's own words, "for LG in-house development of Alta Device technology". (*Id.*, ¶¶ 59-63 and 77.)  LGE also revealed that it had "unintentionally discarded" two of the five solar cells it had received from Alta as samples, despite previously confirming that they were in LGE's possession. (*Id.*, ¶ 87.)  With its vast capital and manufacturing resources, LGE's plan to develop Alta's technology and become a competitor threatens to drive Alta out of business before Alta can reach the stage of economical mass commercialization. (*Id.*, ¶¶ 20 and 91.)  Alta's very existence is threatened by LGE's theft of Alta's Confidential Information that LGE obtained under the NDA. (*Id.*, ¶ 21.)

## III.   PROCEDURAL BACKGROUND TO LGE'S SECTION 2019.210 MOTION

In connection with the June 27, 2018, initial Case Management Conference, LGE requested that discovery should not commence, in part, because Alta had not yet identified its trade secrets pursuant to Section 2019.210. (D.N. 29 at 11:4-7.)  The Court denied LGE's request to stay discovery and ordered Alta to serve its Identification by July 16, 2018. (D.N. 31 at 1:22 and 2:1.)

Alta timely served its Identification on July 16, 2018, at around 4:00 p.m. (Declaration of Dagogo-Jack, Exh. C.)  The following morning, July 17, 2018, LGE's counsel wrote to Alta's counsel asserting that Alta's Identification was inadequate. (*Ibid.*)  Over the next few weeks, the parties exchanged their views and authorities regarding the sufficiency of Alta's Identification, but were unable to resolve their differences. (*See id.*, Exhs. A-D and F-G.)

LGE takes the position that Alta may not obtain any discovery pertaining to trade secrets from LGE until Alta's Identification is sufficient, yet LGE did not act to bring this dispute to the Court for a determination.  Instead, LGE insisted that Alta amend its Identification and seek

leave of Court in order to do so. (*See id.* Exh. D.)  To expedite the resolution of the dispute, Alta instead stated on August 9, 2018, that it intended to make a motion for a determination that its Identification was sufficient, and invoked the "meet and confer" provisions of the Court's Standing Order required before seeking relief from the Court. (D.N. 45 at 5.)

At their conference on August 15, 2018, Alta took the position that this is a discovery motion.  LGE took the position that the motion was LGE's to make and that it was not within the purview of the Magistrate Judge in this case.  The parties agreed to seek guidance from the Court regarding the proper procedure for resolving the dispute. (*Ibid.*)

In their joint discovery dispute letter of August 22, 2018, both Alta and LGE requested leave to file a noticed motion concerning the dispute. (*Id.* at 1.)  Only the day after the joint letter had been submitted to the Court did LGE disclose the identity of its proposed expert, Dr. Michael Lebby ("Lebby"), whose opinion LGE purportedly needed in order to file the instant Motion. (D.N. 50 Exh. A.)  Alta objected to the disclosure of its highly confidential information to Lebby, in part, because he had obtained patents covering thin film solar cells for a company whose patent portfolio had been acquired by a major solar cell manufacturer with whom Lebby had a research relationship, and because Lebby holds himself out as a technologist for consulting and could perform work for a competitor of Alta.  LGE's disclosure of Lebby's work was also incomplete.  The dispute was submitted to the Court by joint letter of September 13, 2018. (D.N. 50.)  On October 16, 2018, the Magistrate Judge found that LGE could designate Lebby as an expert under the Stipulated Protective Order, but only if he first provided additional assurances about his ongoing work and agreed to forego any work in the field of thin film solar cell manufacturing for the same duration as the patent prosecution bar he is subject to under the Stipulated Protective Order (D.N. 41) entered herein. (D.N. 54)  Lebby's declaration was filed on October 18, 2018. (D.N. 56)

LGE filed the instant Motion on October 25, 2018, only seven days after Lebby had received clearance to review Alta's highly confidential information, including Alta's Identification.[1]

LGE's strategy throughout this litigation has been to delay Alta's trade secrets discovery. As the procedural background to this Motion demonstrates, LGE's counsel claimed inability to understand Alta's Identification within hours of receiving it and prior to showing it to Lebby, even though LGE's own technical team had already reviewed Alta's trade secrets.  LGE then took no step toward bringing this Motion to the Court for a determination.  Instead, Alta had to take the initiative in getting this matter before the Court.  Only when it was clear that Alta might file a motion first did LGE claim interest in filing this Motion.  In seeking leave from the Court to file this Motion, however, LGE failed to reveal to either Alta or the Court that LGE had an as-yet undisclosed expert whose opinion LGE purportedly needed to file its Motion, and who had not yet seen Alta's Identification.  LGE's disclosure of Lebby's work in the field was incomplete and objectionable to Alta.  After Alta brought its objections to LGE's expert to the Court for

---

[1]   LGE's Motion is based upon Alta's original Identification of July 16, 2018. Alta amended its Identification to make corrections and clarifications. (Declaration of John D. O'Connor filed and served herewith ("O'Connor Decl.") at ¶¶2-4.)  LGE incorrectly asserts that Alta is required to obtain leave prior to amending its Identification. (*See* Mot. at 4:21-28 n.1.) Neither Section 2019.210 nor any order of the Court required Alta to obtain leave prior to amendment.  In all of the cases cited by LGE in which leave was required, the Court had entered an order to that effect as a part of its case management. *See, e.g.*, *Neothermia Corp. v. Rubicor Med., Inc.*, 345 F. Supp.2d 1042, 1044-45 (N.D. Cal. 2004).  No discovery took place prior to Alta's amendment.  (O'Connor Decl., ¶5.)  Accordingly, Alta could not have improperly used any discovery from LGE to amend its Identification in contravention of the policy underlying the statue.  *See ibid.*

Alta notes that trade secret (34) in the Identification that is the subject of LGE's Motion incorrectly refers ███████████████████████. (O'Connor Decl., ¶3.) Alta corrected this error in its Second Amended Identification of Trade Secrets Pursuant to Cal. C.C.P. section 2019.210 ("Second Identification"). (O'Connor Decl., ¶4.) Alta will want to ensure that trade secret (34) is correctly stated in the operative Identification that the Court and the parties will rely upon to govern this action. (*Ibid.*)

resolution, the Court required Lebby to provide further assurances that he did not have ongoing work in the field or with a competitor and would not work in the field until at least two years after the termination of this action. LGE's delay in revealing its need for an expert and objectionable disclosure thus had the effect of further delaying Alta's trade secrets discovery.

## IV.   **LEGAL STANDARD**

California's discovery code requires that a party alleging trade secret misappropriation "identify the trade secret with reasonable particularity" before obtaining discovery into another party's trade secrets. *See* Cal. Civ. Proc. Code § 2019.210. The purpose of Section 2019.210 is to "give both the court and the defendant reasonable notice of the issues which must be met at the time of trial and to provide reasonable guidance in ascertaining the scope of appropriate discovery." *Brescia v. Angelin*, 172 Cal. App. 4th 133, 144 (2009) (quoting *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253 (1968) ("*Diodes*")).[2]

The "particularity" required by Section 2019.210 is not statutorily defined, but instead is purposely vague to permit "play in the joints." *Advanced Modular Sputtering, Inc. v. Superior Ct.*, 132 Cal. App. 4th 826, 835 (2005). The party alleging misappropriation is not required to "define every minute detail of its claimed trade secret at the outset of the litigation," but "must make some showing that is reasonable, i.e., fair, proper, just and rational[,] under all of the circumstances." *Id.* at 835-36 (reasonable doubt as to the adequacy of the description is to be resolved in favor of allowing discovery to proceed). Only reasonable particularity is required, not the greatest particularity possible. *Phoenix Techs., Ltd. v. DeviceVM, Inc.*, No. 09-4697-EDL, 2010 U.S. Dist. LEXIS 24884, at *6-7 (N.D. Cal. Mar. 17, 2010) (quoting *Advanced Modular*, 132 Cal.App.4th at 835-36).[3]

---

[2] No case requires Section 2019.210 to be applied in federal courts in this District. However, courts within this District find it appropriate to require identification of trade secrets as a case management tool prior to trade secrets discovery. *See, e.g., Loop AI Labs, Inc. v. Gatti*, No. 15-cv-00798-HSG (DMR), 2015 U.S. Dist. LEXIS 170349, at *5-8 (N.D. Cal. Dec. 21, 2015).

[3] Alta notes that LGE repeatedly cites throughout its brief to the Ninth Circuit *Imax* case as authority on the particularity required under Section 2019.210. Neither the *Imax* nor the *Agency*

---

The trade secrets themselves need not be set forth, only information sufficient to permit the defendant to ascertain *the boundaries within which the secret lies*. *Prolifiq Software Inc. v. Veeva Systems Inc.*, No. C 13-03644 SI, 2014 U.S. Dist. LEXIS 77493, at *6 (N.D. Cal., June 4, 2014). Where the subject matter of the trade secrets is a manufacturing process, the plaintiff need only identify the end product manufactured and supply sufficient data concerning the process *without revealing the technical details of the process or the secrets themselves*. *Pixion, Inc. v. PlaceWare, Inc.*, 421 F. Supp. 2d 1233, 1241-42 and n.4 (N.D. Cal. 2005), *affirmed* 177 Fed. Appx. 85 (Fed. Cir. 2006) (quoting *Diodes,* 260 Cal. App. 2d 244, 253).[4] It is sufficient if the trade secret claimant distinguishes its trade secret from the other components of a process in which the trade secret is used. *See Lilith Games (Shanghai) Co. v. uCool, Inc.*, No. 15-CV-01267-SC, 2015 U.S. Dist. LEXIS 89365, at *13 (N.D. Cal. July 9, 2015).

A Section 2019.210 identification describes trade secrets with reasonable particularity where it sets forth broad categories of information claimed as trade secrets, so long as the descriptions of the categories are sufficient to enable the defendant to identify and understand what the plaintiff claims is protected. *Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1452-53 (2002). Thus, an identification of categories of information by a manufacturer including "composite material process technologies," "finishing processes for…products," "costs of production," "market research data," and "strategy plans" were all determined to be reasonably

---

Solutions.Com cases (*see, e.g.*, Mot. at 6:1-8) involved the interpretation or application of Section 2019.210. The two cases involved motions for summary judgment and for preliminary injunction, respectively. *See Imax*, 152 F.3d at 1163-64; *Agency Solutions.Com*, 819 F. Supp. 2d at 1005-06. In those two cases, the plaintiffs had the burden of proving their trade secrets existed (*see Imax*, 152 F.3d at 1164 and 1166; *Agency Solutions.Com*, 819 F. Supp. 2d at 1015), not simply describing the boundaries within which they lie as is required for discovery to commence under Section 2019.210. Indeed, in each of those cases, discovery into the trade secrets involved had already commenced. *See Imax*, 152 F.3d at 1165; *Agency Solutions.Com*, 819 F. Supp. 2d at 1013.

[4] Alta notes its manufacturing process can be a trade secret even if portions of it are generally known, or even if every individual portion of it is generally known, so long as the combination of all such information is not generally known. *See Spring Design, Inc. v. Barnesandnoble.com, LLC,* No. C 09-05185 JW, 2010 U.S. Dist. LEXIS 136569, at *10-11 (N.D. Cal. Dec. 27, 2010).

particular descriptions of the boundaries within which the trade secrets lie. *See ibid. See also ActiveRain Corp. v. Move, Inc.*, No. CV 07-5037-DDP(CTx), 2008 U.S. Dist. LEXIS 126752, at *2-3 (C.D. Cal. May 8, 2008) (finding similar categories sufficiently specific).  Moreover, where the trade secrets were voluntarily disclosed by plaintiff to defendant during acquisition negotiations and the plaintiff is able to produce documents containing the trade secrets, the parties should be able to understand the categories of trade secrets. *ActiveRain Corp. v. Move, Inc.*, No. CV 07-5037-DDP(CTx), 2008 U.S. Dist. LEXIS 127718, at *1-2 and *6-7 and n.3 (C.D. Cal. Apr. 29, 2008).

"Reasonable particularity" does not require a party to define its trade secrets in detail, nor does Section 2019.210 require a mini-trial on misappropriation before plaintiff is allowed discovery. *Advanced Modular,* 132 Cal. App. 4th at 835–36; *Prolifiq,* 2014 U.S. Dist. LEXIS 77493, at *6.  No more particularity is demanded by the statute than that necessary to permit the defendant to "discern the boundaries of the trade secret so as to prepare available defenses, or to permit the court to understand the identification so as to craft discovery."  *Gatan,* 2017 U.S. Dist. LEXIS 49751, at *14.  "The nature of the identification required in any particular case need only be reasonable under the circumstances. It cannot be divorced from the statutory goals which it is intended to serve." *Brescia,* 172 Cal. App. 4th at 152.

Section 2019.210 "does not create a procedural device to litigate the ultimate merits of the case – that is, to determine as a matter of law on the basis of evidence presented whether the trade secret actually exists." *Brescia,* 172 Cal. App. 4th at 149. *See also Prolifiq,* 2014 U.S. Dist. LEXIS 77493, at *8. "[Plaintiff] is *not* required to convince defendants or the court in its section 2019.210 statement that its alleged trade secrets are not generally known to the public." *Perlan Therapeutics, Inc. v. Superior Court*, 178 Cal. App. 4th 1333, 1351 (2009) (requiring proof of element of claim at prediscovery stage would constitute legal error).  For the same reason, the plaintiff is not required to explain *why* the alleged trade secret differs from matters generally known unless its identification is otherwise inadequate in describing the boundaries within which

1    the trade secret lies. *Brescia*, 172 Cal. App. 4th at 143; *Gatan, Inc. v. Nion Co.*, No. 15-cv-01862-

2    PJH, 2017 U.S. Dist. LEXIS 49751, at *14 (N.D. Cal. Mar. 31, 2017).

3        Where credible experts disagree as to whether they can understand and distinguish the

4    trade secrets identified by the plaintiff, the identification should be considered adequate so as to

5    allow discovery to commence. *See Advanced Modular*, 132 Cal. App. 4th at 836-37 and 831

6    (plaintiff's expert asserted defense expert was being "obtuse" in claiming confusion over the

7    trade secrets claimed). *See also Brescia*, 172 Cal. App.4th at 148 and *Phoenix Techs.*, 2010 U.S.

8    Dist. LEXIS 24884, at *12-13 (applying *Advanced Modular* rule that discovery goes forward

9    where claimant's expert is credible).

10       Indeed, if the defendant is able to craft detailed arguments for why the trade secrets

11   claimed in the plaintiff's Section 2019.210 identification are generally known or do not

12   constitute trade secrets, that demonstrates that the plaintiff has adequately described them so that

13   the defendant is able to investigate and prepare a defense against the plaintiff's trade secrets

14   claims. *See Prolifiq*, 2014 U.S. Dist. LEXIS 77493, at *8. *See* also *Advanced Modular*, 132 Cal.

15   App. 4th at 834 (explaining that one of the purposes of Section 2019.210's disclosure

16   requirement is to "'enable [ ] defendants to form complete and well-reasoned defenses'").  Thus,

17   where the defendant is able to investigate by searching prior art as to whether the alleged trade

18   secrets were generally known and, therefore, already in the public domain, the defendant

19   demonstrates that it understands the boundaries of the alleged trade secrets and is "quite capable

20   of investigating possible defenses." *Brescia*, 172 Cal. App. 4th at 151-52.  *See also Prolifiq*, U.S.

21   Dist. LEXIS 77493, at *8 (detailed arguments as to why plaintiff's information does not

22   constitute a trade secret means that plaintiff has adequately identified the information).

23       Trial courts have broad discretion in determining whether a plaintiff's identification

24   satisfies Section 2019.210. *Perlan Therapeutics, Inc. v. Superior Ct.*, 178 Cal. App. 4th 1333,

25   1337 (2009); *Prolifiq*, 2014 U.S. Dist. LEXIS 77493, at *7.  In considering the adequacy of a

26   trade secret identification, "the designation should be liberally construed, and reasonable doubts

27

28

about its sufficiency resolved in favor of allowing discovery to go forward." *Brescia,* 172 Cal. App. 4th at 149; *Prolifiq,* 2014 U.S. Dist. LEXIS 77493, at *7.

A. **Alta Claims Only Non-Public Information About Alta's Technology Provided to LGE and Has Not Used Improper "Catch-All" Descriptions as LGE Contends.**

LGE contends that Alta claims all non-public information about Alta's technology and has used improper "catch-all" descriptions. LGE misrepresents Alta's Identification, which claims only non-public information about Alta's technology provided to LGE. Trade secrets (1) and (9) are, respectively: (1) the research and development information provided by Alta to LGE about its manufacturing process and manufacturing experience;[5] and (9) technologies relating to GaAs-based solar cells and modules that Alta provided to LGE.[6] (*See* Motion ("Mot.") at 6:4-7:11.) Neither of these trade secrets descriptions is an impermissible "catch-all" description. Both of these trade secret identifications are limited to the information provided by Alta to LGE and are therefore easily understandable to LGE.

First, Alta claims as trade secrets information which was revealed by Alta to LGE *at LGE's request* during their negotiations. Thus, LGE is able to understand Alta's Identification to refer to the information Alta voluntarily disclosed. *See ActiveRain*, 2008 U.S. Dist. LEXIS 127718, at *1-2 and *6-7 and n.3 (where trade secrets were disclosed during negotiations, the parties should be able to understand the categories of trade secrets disclosed). As the Court stated in its Order on LGE's Motion to Dismiss:

---

[5] LGE falsely asserts that Alta is claiming "*all* non-public information about Alta's technology, regardless of whether it was even disclosed to LGE." (*See* Mot. at 6:25-26.) As Alta's Identification makes clear, however, Alta is claiming only the non-public information that LGE learned from Alta. (*See* Identification at 2:9-11 and 3:1-6.)

[6] Due to a typographical error, Alta accidentally included two trade secrets numbered (9) in its Identification. Alta subsequently amended its Identification to renumber this trade secret as (9a). (*See* O'Connor Decl., ¶3.) Trade secret (8) and both trade secrets numbered (9) in Alta's Identification are three broad technologies about which Alta provided trade secrets to LGE. (*See* Identification at 4:21-28.)

1   [T]he Court agrees with Alta that because Alta's claims are based on the Confidential
2   Information exchanged pursuant to the 2011 NDA. "LGE can hardly claim it is unable to
    determine what trade secrets Alta gave LGE in 2011 and 2012." (D.N.55 at 14:26-15:2)

3   Second, the documents returned by LGE to Alta make it clear that LGE understands what

4   is meant by trade secrets (1) and (9).   For example, LGE's documents: (a) refer to "Alta

5   technology" that LGE learned from Alta; (b) contain extensive notes concerning the technology;

6   and (c) refer to LGE's plan to "develop in-house" Alta technology." (Declaration of James

7   Mikkelson ("Mikkelson Decl."), ¶¶ 18, 36, 48, 55, 62, 77, 84, 85, 89.)  The entirety of the R&D

8   information Alta disclosed to LGE under the NDA constitutes a valuable trade secret that LGE

9   itself referred to as the "Alta technology."  (*See id.*, ¶ 77-81.)  Similarly, LGE's documents refer

10  to █████████████████████ as one of Alta's three "core technologies." (*See id.*, ¶ 77-

11  79.)  As is apparent from LGE's own documents, LGE actually understands Alta's descriptions.

12  Third, Alta did not stop with its identification of trade secrets (1) and (9), but went on to

13  further describe with greater particularity the trade secrets included within (1) and (9).  Alta's

14  extensive Identification, using both the descriptors employed by LGE to refer to Alta's

15  technology, as well as breaking them down in greater detail by their components, distinguishes

16  Alta's Identification from those in the cases LGE cites. (*See* Mot. at 6:6-19.)  *See, e.g., Loop AI*

17  *Labs*, 195 F. Supp. 3d 1107, 1113-14 (N.D. Cal. 2016) (plaintiff only vaguely referred to

18  pleadings, declarations, and other papers filed without seal in the public record).  When

19  considered as a whole and in its entirety, Alta's Identification provides sufficient information to

20  place LGE on notice as to the trade secrets claimed by Alta and to allow the Court to craft limits

21  on discovery.

22  **B.    LGE Has Used the Same Categories to Describe Alta's Technology that Are
           Used by Alta in Its Identification.**
23

24  LGE argues that Alta has improperly used categories in identifying Alta's trade secrets.

25  (*See* Mot. at 7:12-10:13.)  LGE's argument and Alta's response are similar to the preceding

26  section A, above.  Alta has described its trade secrets using categories, information, and

27  descriptions contained in LGE's own documents discussing Alta's trade secrets.  Alta's trade

28

1    secrets were revealed by Alta pursuant to NDA and at LGE's request.  Thus, LGE is able to

2    understand Alta's Identification. *See ActiveRain*, 2008 U.S. Dist. LEXIS 127718, at *1-2 and *6-

3    7 and n.3.  As the Court stated in its Order on LGE's Motion to Dismiss: "LGE can

4    ascertain…the boundaries within which the secret lies." (D.N. 55 at 13:22-14:1 (internal

5    quotation and citation omitted).

6           The use of categories to identify trade secrets in a Section 2019.210 Identification is

7    appropriate if the defendant can understand what is meant. *See Whyte*, 101 Cal. App. 4th at 1452-

8    53 (defendant showed an understanding of the meaning of the categories used by plaintiff to

9    identify its trade secrets); *ActiveRain Corp.,* 2008 U.S. Dist. LEXIS 126752, at *3 (finding

10   similar categories to be "fairly specific").  Here, in describing trade secret (7) Alta has used

11   categories of trade secrets as they are described in the NDA signed by both LGE and Alta that

12   identified the categories of trade secrets information that the parties contemplated Alta would

13   provide to LGE. (*See* D.N. 55 at 14:8-15:2.)

14          Similarly, Alta's descriptions of trade secrets (8) and (9), ████████████ and

15   ████████████████████, are nearly identical to the descriptions

16   used by LGE to refer to Alta's trade secret technologies. (*See* Mikkelson Decl., ¶¶ 77-85.)

17   LGE's technical questions to Alta were divided into four categories, A, B, C, and D. (*See* id.)

18   Trade secrets (8) and (9) correspond to LGE categories A and B. (*See* id., ¶83.)  LGE cannot

19   claim it does not understand what these descriptions mean when they correspond to the

20   categories employed by LGE in referring to Alta's technology. This Court previously determined

21   that Alta's allegations about the categories of trade secrets Alta disclosed to LGE "give both the

22   Court and LGE notice of the boundaries within which the trade secrets lie." (*See* D.N. 55 at

23   13:21-16:5.)  LGE's current Motion ignores that finding.

24          Moreover, Alta did not simply stop there, but built on its identifications of both (8) and

25   (9) with nearly *five additional pages* of information describing the specific trade secret

26   information involved. (*See* Identification at pp. 5-9.)  Alta's further explication on each of these

27   broader trade secrets is what distinguishes the facts of this case from the *SocialApps* case cited

28

by LGE where the plaintiff described its trade secrets "*only* categorically." *SocialApps*, 2012 WL 2203063, at *3 (emphasis added).

LGE falsely contends that Alta's information – compiled over years of research – as to measures of efficiency, uniformity, and similar matters (trade secrets (42)-(49)) cannot constitute trade secrets. (*See* Mot. at 9:11-10:9.)  Alta's compiled data and other information resulting from years of testing, analysis, and experimentation as well as Alta's superior and unique base of knowledge would be valuable to LGE as a competitor. (*See* Mikkelson Decl., ¶¶ 302-303.) LGE asked Alta about these matters because LGE did not know the answers.  Alta provided substantive answers to each of the questions and answers cited in Alta's Identification. This information therefore constitutes trade secrets which Alta has adequately described in its Identification. *See I-Flow Corp. v. Apex Med. Techs., Inc.*, No. 07cv1200-DMS(NLS), 2008 U.S. Dist. LEXIS 44551, at *13-14 (S.D. Cal. May 23, 2008).  LGE takes issue with whether these qualify as trade secrets, an issue not to be resolved in a Section 2019.210 identification proceeding. *See Perlan,* 178 Cal. App. 4th at 1351.

LGE is able to understand these categories of data and information provided by Alta to LGE. *See Whyte*, 101 Cal. App. 4th at 1452-53; *ActiveRain,* 2008 U.S. Dist. LEXIS 127718, at *1-2 and *6-7 and n.3.  The *SocialApps* case relied upon by LGE also states that a trade secret can be sufficiently identified by a plaintiff "pointing to where it might be found in the information it turned over to [the defendant] in the course of 'due diligence.'" *SocialApps*, 2012 WL 2203063, at *4. That is precisely what Alta did in identifying trade secrets (42)-(49).

Alta's use of categories, information, and descriptions contained in LGE's own documents discussing Alta's trade secrets revealed to LGE during due diligence is reasonably particular.

        C.      **Alta Need Not Identify Its Trade Secrets with Any Greater Particularity than Is Required to Permit LGE to Defend Itself and for the Court to Craft Discovery.**

LGE incorrectly argues that *Advanced Modular* "requires" Alta to satisfy a "heightened particularity" standard because this case involves "highly complex" technology. (*See* Mot. at

---

10:16-11:13.)  LGE's argument is based upon a misinterpretation *Advanced Modular*.  As explained in *Brescia, Advanced Modular* does not impose any greater need for particularity unless it is required to serve the purposes of the statute to enable the defendant to develop defenses and help the court shape discovery. *Brescia,* 172 Cal. App.4th at 149-50.  Unless greater particularity is required to serve one of those twin goals, no further elaboration is required regardless of the complexity of the technology. *Id.* at 150 and 152. *See also Gatan*, 2017 U.S. Dist. LEXIS 49751, at *14.

The Court previously expressed incredulity at LGE's claim that it is unable to understand what trade secrets Alta disclosed to LGE during LGE's due diligence (*see* D.N.55 at 14:26-15:2) and found some of Alta's descriptions of its trade secrets to "give both the Court and LGE notice of the boundaries within which [Alta's] trade secrets lie." (*See* D.N.55 at 13:21-15:2 and 16:2-5.) Nevertheless, Alta's Identification provides even greater details of Alta's trade secrets.

Lebby's opinions are based upon his incorrect understanding that Alta is required to state each trade secret "with a more exacting level of particularity to distinguish the claimed trade secret from matters already known to persons skilled in the field." (*See* Lebby Decl., ¶ 13.) Lebby then proceeds to explain why he believes Alta's trade secrets cannot be distinguished from matters already known and presumably have no value.  Lebby is wrong, and his opinions are based upon an incorrect understanding of the purposes and legal requirements for a Section 2019.210 identification. *See Brescia,* 172 Cal. App.4th at 149-52; *Gatan*, 2017 U.S. Dist. LEXIS 49751, at *14.

Alta is not required on this Motion to distinguish its trade secrets from matters already known.  Nevertheless, Alta has done so.  The declaration of Alta's expert, James Mikkelson, filed and served herewith demonstrates that Alta's technology revealed to LGE was not publicly known and had value to a competitor of Alta. (*See* Mikkelson Decl., ¶¶ 41, 116, 119, 122, 302-305.)

Furthermore, the rule of *Advanced Modular* is that when credible experts disagree as to whether they can understand and distinguish the trade secrets identified by the plaintiff, the

1   identification should be considered adequate so as to let discovery commence. *See Advanced*

2   *Modular*, 132 Cal. App. 4th at 836-37 and 831. *See also Brescia*, 172 Cal. App.4th at 148;

3   *Phoenix Techs.,* 2010 U.S. Dist. LEXIS 24884, at *12-13.

4        LGE was able to satisfy itself through its questions and Alta's answers during due

5   diligence that LGE sufficiently understood Alta's manufacturing process. (*See* Mikkelson Decl.,

6   ¶¶ 54, 172, 177, 219.)  LGE is able to understand the process described in Alta's Identification

7   sufficiently to prepare a defense. *See ActiveRain,* 2008 U.S. Dist. LEXIS 127718, at *1-2 and *6-

8   7 and n.3.

9          **1.**    **Alta's Technology Descriptions Sufficiently Identify Alta's Trade**

10               **Secrets.**

11        Alta's technology is a manufacturing process at its core as LGE acknowledges.

12   (*See* Mot. at 11:16-23.)  LGE admits that under *Diodes*, for Alta's manufacturing process, Alta

13   is only required to "identify the end product manufactured [and] supply sufficient data

14   concerning the process, *without revealing the details of it*…." (*See* Mot. at 12:27-12:4.) *See also*

15   *Pixion, Inc.,* 421 F. Supp.2d 1241-42.  The trade secrets themselves need not be set forth, only

16   information sufficient to permit the defendant to ascertain at least the boundaries within which

17   the secret lies. *Prolifiq,* 2014 U.S. Dist. LEXIS 77493, at *6.  Alta has provided sufficient

18   information regarding its manufacturing process for LGE to defend itself and for the Court to

19   craft discovery.  No further details are required at this stage in order for discovery to proceed.

20        Alta further responds below to each of the subsections of LGE's Motion concerning

21   Alta's manufacturing process using the corresponding headings employed by LGE for purposes

22   of clarity.

23          **a.**    **"Manufacturing Process"**

24        Alta has provided sufficient information about its manufacturing process.  Alta is not

25   required at this early stage to provide more exacting technical details of its techniques, processes,

26   and methods as LGE contends. (*See* Mot. at 13:3-7.)  Alta need only reveal sufficient

27   information to permit LGE to prepare a defense and the Court to craft discovery. *See Pixion,*

28

*Inc.,* 421 F. Supp. 2d 1241-42.  The *Imax* case cited by LGE (*see* Mot. at 13:3-7) is distinguishable because it involved a motion for summary judgment, not a Section 2019.210 identification.

Alta's Identification provides sufficient information concerning Alta's manufacturing process to permit LGE to ascertain the boundaries within which Alta's trade secrets lie.  Alta's Identification describes details sufficient to inform any manufacturer in the field as to the trade secrets being claimed by Alta. (*See* Mikkelson Decl., ¶¶ 54, 172, 177, 219.)

LGE claims that Alta only discloses data which are the results of its methods without disclosing how the results were achieved for trade secrets (10), (10a), (10b), (10c), (15), (26), (32), and (39). (*See* Mot. at 13:7-9.)  These trade secrets include data concerning Alta's growth rates, uniformity achieved, efficiency achievements and targets, and cost information. Information that is the result of research can be a trade secret if it would be valuable to a competitor. *Whyte,* 101 Cal. App. 4th at 1455.  Alta's data would be valuable to a competitor as a proof of concept demonstrating that commercial manufacture is possible. (*See* Mikkelson Decl., ¶¶ 41, 54, 116, 119, 122, 172, 219, 302-305.)  Alta's trade secret (3) (feasibility research and development) and trade secret (4) (road map) would be valuable for the same reasons.

Alta's trade secret (52) (process flow) is a classic trade secret. *See* Cal. Civ. Code § 3426.1(d) ("trade secret" includes a "process").  LGE's lengthy argument and citation to publications in which Alta's process is purportedly disclosed (*see* Mot. at 13:19-14:3) demonstrates that LGE understands this trade secret and is able to prepare a defense. *See Prolifiq,* 2014 U.S. Dist. LEXIS 77493, at *8.

**b.     "Use of Relative Terms"**

Alta's Identification describes sufficient information about its manufacturing process using Alta's "███████████████████." (*See* Identification at 5:7.)  LGE attacks Alta's description of several aspects of this process as "imprecise" because they use "relative terms." (*See* Mot. at 14:10-15:10 discussing trade secrets (16), (22), and (25).)  Alta need not reveal the technical details of its manufacturing process or the secrets themselves. *See Pixion,*

1    *Inc.,* 421 F. Supp. 2d 1241-42.  Alta reveals enough information to provide LGE and the Court

2    the boundaries within which Alta's secrets lie. *See Prolifiq,* 2014 U.S. Dist. LEXIS 77493, at *6.

3    The *Imax* case cited by LGE (*see* Mot. at 15:5-7) is distinguishable because it involved a motion

4    for summary judgment, not a Section 2019.210 identification.

5        Alta's successful ████████████████████████████████████

6    ██████████████████████████ (itemized as trade secrets (36), (36a),  and (36(b))

7    constitute research data that would be valuable to a competitor. (*See* Mikkelson Decl., ¶¶ 53, 58,

8    83.) *See Whyte,* 101 Cal. App. 4th at 1455.

9                    **c.    "Undisclosed Relationship"**

10       Alta's disclosure to LGE that ██████████████████████████████

11   ████████████████████████████ (trade secret (21)) – what works and

12   what does not work – was trade secret "know how" that would be valuable to LGE as a

13   competitor.  (*See* Mikkelson Decl., ¶ 110, 119, 223.) *See Waymo LLC v. Uber Techs., Inc.*, No. C

14   17-00939 WHA, 2018 U.S. Dist. LEXIS 8263, at *10-11 (N.D. Cal. Jan. 18, 2018) (defendant

15   might use negative know-how trade secret by taking its lesson to avoid fruitless development

16   efforts).  No further precision is required for this trade secret to be understood as LGE contends.

17   (*See* Mot. at 15:11-19.)

18                   **d.    "Undisclosed Compositions"**

19       Alta's Identification states that ████████████████████████████

20   ████████████████████████ (53) and (54).  This provides sufficient information to

21   serve the purposes of Section 2019.210 without revealing the trade secrets themselves. *See*

22   *Pixion, Inc.,* 421 F. Supp. 2d 1241-42.  No more information is required as LGE contends. (*See*

23   Mot. 15:20-16:1.)

24                   **e.    "Apparatus Design"**

25       LGE argues that Alta's MOCVD apparatus design cannot constitute a trade secret. (*See*

26   Mot. at 16:7-21.)  LGE misleadingly cites *SocialApps* for the proposition that the design of a

27   device can never be a trade secret.  *SocialApps* does not support the proposition for which LGE

28

1   cites it. *SocialApps* and *Silvaco,* the case upon which *SocialApps* relied, involved software

2   programs available to the public.  As stated in *Silvaco*, the underlying design of a software

3   program cannot be a trade secret because it is "evident to anyone running the finished program

4   [and] ceases to be a protectable trade secret for that reason." *Silvaco*, 184 Cal. App. at 221-22.

5        In contrast, this case involves an Alta-designed trade secret apparatus or device, kept in a

6   secure location on Alta's premises, of which LGE was shown sketches and only permitted to

7   examine when LGE visited Alta in October 2011. (*See* Identification at 6:13-15.)  A "device" is

8   included within the statutory definition of a trade secret so long as it is not generally known to

9   others. *See* Cal. Civ. Code § 3426.1.  Alta is not required to provide sketches or all of the

10  technical details of the secrets themselves in its Identification. *See Pixion, Inc.,* 421 F. Supp. 2d

11  1241-42.  LGE argues that it cannot distinguish trade secrets aspects of Alta's MOCVD design

12  and operation from those purportedly disclosed in various publications. (*See* Mot. 16:22-17:14.)

13  LGE's argument and citation to publications in which Alta's process is purportedly disclosed

14  demonstrates that LGE understands this trade secret and is able to prepare a defense. *See*

15  *Prolifiq,* 2014 U.S. Dist. LEXIS 77493, at *8.

16            **f.**      "███████████████████████████████"

17        LGE contends that it cannot distinguish Alta's ██████████████████████████████

18  ██████ from "matters generally known" in the field. (*See* Mot. at 18:15-22:9.)  Alta is not

19  required to explain why its trade secrets differ from matters already known in the industry unless

20  its Identification is otherwise inadequate to permit LGE to understand the boundaries within

21  which its trade secrets lie. *See Brescia*, 172 Cal. App. 4th at 143; *Gatan,* 2017 U.S. Dist. LEXIS

22  49751, at *14.  LGE's ability to make detailed arguments as to why Alta's claimed trade secrets

23  are already known and therefore not trade secrets demonstrates that Alta has adequately

24  described them so that LGE can investigate the merits of Alta's trade secret claims. *See Prolifiq*,

25  2014 U.S. Dist. LEXIS 77493, at *8-9; *Brescia*, 172 Cal. App. 4th at 151-52.  Section 2019.210

26  "does not create a procedural device to…determine…whether the trade secret actually exists."

1    *Brescia,* 172 Cal. App. 4th at 149. *See also Prolifiq,* 2014 U.S. Dist. LEXIS 77493, at *7-8;

2    *Perlan*, 178 Cal. App. 4th at 1351.

3              **2.      Alta's Unique Business Information Constitutes Trade Secrets.**

4         *All* of Alta's own research and development, road map, and costs would be unique to Alta

5    and would be valuable information for a competitor to have in order to meet or undercut Alta's

6    position as the forerunner in a burgeoning market. (*See* Mikkelson Decl., ¶¶ 41, 116, 119.) *See*

7    *also Whyte,* 101 Cal. App. 4th at 1455-56 (plaintiff's costs, strategic plans, and other business

8    information are trade secrets unique to plaintiff).  Alta is therefore not required to distinguish its

9    trade secret costs and other business information from what is "generally known in the field" as

10   LGE contends. (*See* Mot. at 22:12-23:15.)

11        **D.      Alta's Identification Is Not Required to be in the Form of a List as LGE**
         **Demands.**

12

13        Alta has identified its trade secrets in a manner that is reasonable under the circumstances

14   of this case. *See Bladeroom Grp. Ltd. v. Facebook, Inc.*, No. 5:15-cv-01370-EJD, 2018 U.S.

15   Dist. LEXIS 10905, at *7-8 (N.D. Cal. Jan. 2, 2018).  The form of the identification required

16   under Section 2019.210 is not statutorily defined, but rather is vague in order to permit "play in

17   the joints." *Id.* at 7.  Alta's Identification describes a manufacturing process which requires some

18   "flow" for the reader to follow the interrelated steps of the process.  LGE's demand for an

19   identification in the form of a "list" (*see* Mot. at 23:17-24:15) is not required by the statute or the

20   *Advanced Modular* case cited by LGE.

21        **E.      Alta's Reference to Portions of LGE's Own Documents and Answers**
         **Provided by Alta to LGE's Questions Provides Reasonable Particularity.**

22

23        Alta refers to portions of LGE's own documents as well as questions asked by LGE,

24   along with the corresponding answers provided by Alta (Q&A), to describe the trade secrets Alta

25   alleges LGE misappropriated.  (*See* Identification at 3:5-13.) These documents demonstrate that

26   Alta's trade secrets were considered important enough to LGE to ask about them or discuss

27   them.  Alta's references to specific portions of LGE's documents and the Q&A are appropriate

28

---

ALTA'S OPPOSITION TO LGE'S MOTION TO COMPEL FURTHER IDENTIFICATION
OF TRADE SECRETS PURSUANT TO CAL. CCP §2019.210

means of identifying these trade secrets. *See Myrio Corp. v. Minerva Network, Inc.*, Case No.: C 00-20996 RMW (PVT), 2001 U.S. Dist. LEXIS 10461, at *3 (N.D. Cal. Apr. 4, 2001) (allowing plaintiff to reference documents setting forth trade secrets by specifying the portions of the document describing them).  Referencing specific portions of documents in this manner to identify trade secrets was approved of by the court in the *Loop AI* case cited by LGE.  *See Loop AI*, 195 F. Supp. 3d at 1116 (citing *Myrio*).

## V.   **CONCLUSION**

For all of the foregoing reasons, LGE's Motion to Compel Further Identification of Alta's Trade Secrets should be denied.


DATED: <u>November 8, 2018  </u>                         <u>/s/ *John D. O'Connor*                   </u>
                                                             John D. O'Connor
                                                             Joe. D. Calhoun
                                                             Dirk van Ausdall
                                                             O'CONNOR AND ASSOCIATES
                                                             Attorneys for Plaintiff
                                                             ALTA DEVICES, INC.