# O'CONNOR AND ASSOCIATES

**ATTORNEYS AT LAW**
**201 Mission Street, Suite 710**
**San Francisco, California 94105**
_____

Telephone:
(415) 693-9960

Facsimile:
(415) 692-6537

Reply to:
John D. O'Connor

Email:
john@joclaw.com

February 6, 2019

Hon. Virginia K. DeMarchi
United States District Court
  for the Northern District of California
San Jose Courthouse
280 South 1st Street
San Jose, 95113

Re:     ***Alta Devices, Inc. v. LG Electronics, Inc.,*** **Case No. 18-cv-404-LHK-VKD**
        **Dispute Concerning Number of ESI Custodians**

Dear Judge DeMarchi:

The parties jointly seek the Court's resolution of the following dispute:

**Statement of the Dispute**

1. The number and identities of ESI custodians.

**Plaintiff Alta's Position**

### A.  Background

This is a trade secrets misappropriation case.  Alta's main asset is its unique technology for mass production of GaAs thin film photovoltaic devices.  Alta's survival hinges on this technology, which Alta has spent eleven years and hundreds of millions of dollars to develop.

LGE is one of the largest electronics manufacturers, operating worldwide with at least nine of its 123 subsidiaries in the US.  LGE employs 75,000 people and reported approximately $55 billion in sales and $1.7 billion in profit in 2017.

LGE first expressed interest in Alta's technology and met with Alta in October 2010.  LGE subsequently invited Alta to meet in Seoul in April 2011, after which LGE expressed interest in a joint venture.  The parties executed an NDA in June 2011 that precluded LGE from using, disclosing, or developing Alta's technology.  Alta alleges that LGE intended to misappropriate and develop Alta's technology when the 2011 NDA was executed.

Pursuant to this 2011 NDA, Alta disclosed its technology, including trade secrets, at meetings and during a tour of Alta's facilities in Sunnyvale in July and October 2011. After obtaining Alta's technology, LGE secretly planned for, in LGE's own words: "LG in-house development of Alta Devices technology." Thereafter, LGE's technologists sought and obtained additional information from Alta before revealing that LGE had no interest in a joint venture with Alta.

Under guise of being a customer interested in purchasing Alta's device for LGE's electronic products, LGE contacted Alta in 2013 and 2014 to obtain additional information and five samples, two of which were not returned and seemingly underwent reverse engineering.

In 2016, LGE published a patent application and other publications from which Alta first learned that *LGE is producing photovoltaic devices using the same or similar process as Alta's*. LGE's use and disclosure continued at least through 2016, and likely into 2018.

With its vast resources, LGE can drive Alta out of business, which would damage Alta in excess of Alta's cost of developing its technology, estimated at several hundred million dollars although the exact amount is presently not calculated.

Over several years, many LGE employees and agents had contact with Alta in furtherance of LGE's efforts to obtain Alta's technology under pretense. Alta is entitled to conduct discovery into what LGE concealed from Alta, *i.e.*, the true reasons for LGE's interest in Alta's technology, LGE's motivation for meeting with or requesting information from Alta, and what these persons discussed with others internally or otherwise did with the information obtained from Alta. *Alta's* only source for the information it needs is discovery from LGE.

## B.  LGE Custodians

The following individuals were directly involved:

1.  Skott Ahn
2.  Younghak Chang
3.  Hyeunseok Cheun
4.  Hyunhak Cho
5.  Jincheol Cho
6.  Joonhyoung Cho
7.  Yoon-Ho Choi
8.  Henry Chung
9.  Sung Han
10. Jang-Bum Heo
11. Doo Sup Hwang
12. Sung-Tae Hwang

13. Changhyun Jeong
14. Ji-Weon Jeong
15. Kyungchul (Casey) Kim
16. Hyungjung Kim
17. Minsoo Kim
18. Seok Jin Kim
19. Soohyun Kim
20. Sungwook Kim
21. Youngtae Kim
22. Gi Rag (Greg) Lee
23. Heonmin Lee
24. Hyun Lee
25. Jeong Soo Lee
26. Jeong-Won Lee
27. Jae Kyu (Joshua) Lee
28. John Winston Min
29. Andrew H. (Hyeongjoo) Moon
30. Jaewoo Shin
31. Joo Yeon Sung
32. Wonki Yoon
33. Dongjoo You

Each of these LGE-affiliated individuals has or had possession, custody, or control of relevant information as the facts set forth below demonstrate:

### 1. April 2011 Meeting and NDA

LGE's **Sungwook Kim** initiated and attended the April 2011 meeting with Alta along with **Younghak Chang**, **Heonmin Lee**, and **Joo Yeon Sung**.  **Skott Ahn,** LGE's CTO, was included in correspondence regarding the meeting.   LGE then asked Alta for an NDA so that Alta could  disclose more information.

**Joo Yeon Sung** negotiated the 2011 NDA with Alta in April-May 2011, sent Alta an "engineers' questionnaire" in May 2011, and asked for a tour of Alta's production line. **Sungwook Kim** was included in the 2011 NDA negotiations.

**Jeong Soo Lee** and **Ji-Weon Jeong** executed the 2011 NDA on LGE's behalf in June 2011.  **Jeong Soo Lee** expressed an "urgent" interest in Alta's pilot line and wanted to see it operating and had **Yoon Choi** (identified in LGE's initial disclosures) request a visit to Alta.

### 2. July 2011 Meeting

 **Joonhyoung Cho**, **Yoon-Ho Choi, Hyungjung Kim**, and **Jeong Soo Lee** visited Alta's facilities in July 2011 and were provided a presentation responding to their engineers' questions, with confidential information regarding feasibility of mass production.  **Henry Chung** subsequently requested a meeting with Alta on behalf of **Skott Ahn** to discuss Alta's technology on August 1, 2011.

### 3. October 2011 Meeting

LGE requested that other engineers and a business manager, including LGE's solar business officer, visit Alta's facilities in October 2011. LGE's **Doo Sup Hwang**, **Ji-Weon Jeong**, **Seok Jin Kim**, **Yoon-Ho Choi** and **Sung Han** visited and were provided additional confidential information and examined Alta's trade secret MOCVD tool.

### 4. February 2013 Meeting

In February 2013, **Henry Chung** requested that Alta meet with an LGE team of mobile business engineers, ostensibly to learn how Alta's solar devices might extend cellphone battery life.  The participants included **John Winston Min**, **Gi Rag (Greg) Lee**, and **Hyunhak Cho**.

### 5. Additional LGE Personnel Involvement and Technology Development

CTO **Skott Ahn** expressed interest in July 2011 and January 2013 in personally meeting with Alta.  **Jincheol Cho** was identified in August 2011 as being in charge of LGE's discussions with Alta.

**Henry Chung** met with Alta's CEO in October 2010 and repeatedly contacted and met with Alta over subsequent years.  **Sung Han** was the principal contact in late 2011-2012 for discussions with Alta.  In 2014, **Jang-Bum Heo** asked Alta to attend a meeting at LGE, asked for presentation materials, and posed questions to Alta.

**Changhyun Jeong** contacted Alta's tool manufacturer for a tool similar to Alta's in October 2012.  **Kyungchul (Casey) Kim** asked Alta to provide LGE with Alta's wafer supply chain in March 2013.  **Minsoo Kim** and **Youngtae Kim** requested samples in 2014 and 2015.  **Jeong-Won Lee** expressed interest in visiting Alta in July 2011 and made arrangements by providing a list of proposed LGE visitors.

**Jae Kyu (Joshua) Lee** requested information from Alta in November 2013-January 2014, including Alta's mass production capabilities.  **Andrew H. (Hyeongjoo) Moon** met with Alta in San Diego in October 2014 and subsequently requested a meeting with Alta in San Jose.

**Jaewoo Shin** posed questions to Alta for LGE R&D in October 2014, requested a meeting and met with Alta in October 2014.  LGE identified **Wonki Yoon** in its initial disclosures.

O'CONNOR AND ASSOCIATES

**Dongjoo You** was identified as the lead inventor (along with **Wonki Yoon** and **Heonmin Lee**, both identified in LGE's initial disclosures) in LGE's patent application discussed in paragraphs 68-70 of Alta's Complaint (DN 77).

**Soohyun Kim** and **Sun-Tae Hwang** are co-authors of publications discussed in paragraphs 66 and 67 of Alta's Complaint. **Hyeunseok Cheun** and **Hyun Lee** are also co-authors of the latter article.

In meeting and conferring, LGE identified 31 Alta custodians, to which Alta agreed on condition that LGE accept Alta's proposed custodians. LGE refused and now asserts that 8-10 custodians are sufficient for both parties.

The facts determine the appropriate number of custodians. *See, e.g., Oracle Am., Inc. v. Google Inc.*, No. 10-cv-03561-WHA(DMR), 2015 U.S. Dist. LEXIS 163956, at *7 (N.D.Cal. Dec. 3, 2015) (37 custodians allowed). LGE's citation to the *Nevro* case is misleading. *Nevro* is a *patent case.* The local model ESI order for *patent cases* limits the number of custodians to five. This is not a patent case. Five custodians are not "standard" outside of patent litigation.

LGE unjustifiably asserts its "senior executives" should be not be custodians. A similar claim was rejected in *Shenwick v. Twitter, Inc.*, No. 16-cv-05314-JST(SK), 2018 U.S. Dist. LEXIS 22676 (N.D.Cal. Feb. 7, 2018) where Twitter argued its CEO should not be a custodian. "It is always possible that one custodian will have a document or documents that other custodians have not retained, or even that one custodian may have created a document, such as handwritten notes, that no other custodian possesses." *Id.* at *16. The *Apple* case that LGE cites deals solely with apex *depositions*. Neither *Apple* nor any other case excuses corporations from searching and producing relevant documents and ESI from executives.

Alta's disclaimer of claims under the 2014 NDA does not render related information "off limits" for discovery. LGE's theft and development of Alta's trade secrets all relate to LGE's breach of the 2011 NDA which establishes this Court as the appropriate forum. LGE's argument that employees of its wholly-owned subsidiary had "little or no knowledge" of prior discussions with Alta is irrelevant. A reasonable inference can be made from LGE's course of conduct that those subsidiary employees acted in concert with and at the direction of those at LGE involved in developing Alta's technology. In discovery, corporate subsidiaries are presumptively controlled by their parent. *See Nelson v. Capital One Bank*, No. C-01-0079 PJH(EMC), 2001 U.S. Dist. LEXIS 23141, at *4-6 (N.D.Cal. Dec. 17, 2001).

**Defendant LGE's Position**

### A.    Background

Virtually every aspect of Alta's background description is false: i) LGE did not receive trade secrets from Alta -- only high level, vague, information, widely known in the field; ii) LGE has not used the information it received from Alta for purposes outside of the diligence it conducted in 2011-12; and iii) LGE has **not** commercialized GaAs thin film solar cell technology, and has no plans to do so.

### B.    LGE Custodians

Alta has demanded that LGE collect from **33 custodians**, and has refused to negotiate any compromise for less. **33 custodians** from only one party are far too many for most disputes, and certainly disproportionate to the needs of this case. *See, e.g., Nevro Corp v. Bos. Sci. Corp.*, No. 16-CV-06830-VC (MEJ), 2017 WL 2687806, at *3 (N.D. Cal. June 22, 2017) (court ordered 7 custodians per side, where standard ESI order for patent cases set a default of 5).[1] Considering the dispute as a whole, Alta's discovery needs can be achieved with 8-10 LGE custodians. LGE proposed three, and invited Alta to suggest another 3-6. Alta rejected any number below 33.

The burdens and costs to LGE associated with 33 custodians would be severe. Collections often require interviews, questioning, and/or downtime that distract and prevent custodians from carrying out their job duties. The impact of such disruptions is directly proportional to the number of custodians. Here, the custodians Alta seeks include senior executives with significant responsibilities. Collections from them would be even more disruptive. Many of these people had but a peripheral relation to this dispute, which makes such disruptions entirely disproportionate to the limited value of the discovery. Furthermore, most of the proposed custodians are in Korea. Due to the lack of e-discovery vendors in Korea who collect documents to US litigation standards, LGE has engaged a vendor who will fly a collection team in from another country. The vendor's costs will increase substantially if it must collect from 33 custodians instead of 8-10.

For each of the 33, Alta offers only flimsy explanations of need. Alta's list includes former employees for whom LGE has no extant data, senior executives whose involvement is tangential, individuals whose only connection relates to the 2014 NDA that Alta disclaims in its Complaint, and others with similarly attenuated involvement. Alta appears to believe that any involvement, no matter how insignificant, warrants

---

[1] Alta's citation to *Oracle v. Google*, No. 10-cv-03561-WHA(DMR), 2015 WL 7775243 (N.D.Cal. Dec. 3, 2015), as permitting 37 custodians supports LGE's position: (1) *Oracle* was a **much** larger case than this, and (2) Oracle actually requested 49 custodians and the court required Oracle to eliminate 12.

custodian status.  That is not the law; relevance, burden, and proportionality must be considered.

**Proposed custodians who should be excluded**

1. **Former employees**:  Several individuals on Alta's list left the company long before this lawsuit.  Company policy (without a litigation hold) is to delete and not retain former employees' files, and that was the case with these individuals.  Furthermore, LGE does not maintain back-up tapes.  Thus, for these individuals, there is nothing for LGE to collect.  These people (and their departure dates) are **Sung Han** (1/10), **Ji-Weon Jeong** (1/12), **Hyungjung Kim** (6/16), **Seok Jin Kim** (4/14), and **Andrew H. Hyeongjoo Moon** (7/2015).  LGE is prepared to make a supporting offer of proof.

2. **Senior leadership**:  Alta does not dispute that three individuals are in senior leadership at LGE.  Given their attenuated relevance, they should not be custodians.  LGE's position is based on the proportionality principle that underlies the "apex doctrine" (requiring a heightened showing before senior executives can be deposed).  While the burden of collecting documents from senior leadership might be lower than deposing them, the relevance here is also lower.  Therefore, balancing the burdens and potential relevance, proportionality militates against requiring document collection from these senior leaders.  *See, e.g., Apple v. Samsung*, 282 F.R.D. 259, 263 (N.D.Cal. 2012) (explaining "two-prong test for unique first-hand, non-repetitive knowledge and for the party's attention to other, less intrusive discovery methods").  These balancing principles apply with equal force to discovery methods other than depositions.  *Shenwick v. Twitter,* No. 16-cv-05314-JST(SK), 2018 WL 833085 (N.D.Cal. Feb. 7, 2018), cited by Alta, is readily distinguished.  Without refusing to apply the "apex" analysis to custodians, the court ruled that Twitter's CEO was closely involved in the facts at issue.  Here, by contrast, each executive had very limited involvement— according to Alta, each of them merely "requested" meetings, were cc'ed on emails and/or attended meetings also attended by others.  Thus, any information they have would be cumulative.  The three individuals in this category are:  **Sungwook Kim**, **Jeong Soo Lee**, and **Skott Ahn**.

3. **Only involved via the 2014 NDA**:  Several LGE employees' only involvement relates to the 2014 NDA, including samples provided pursuant to that NDA between 2013-2015 (after the one year Disclosure Period of the 2011 NDA).  However, as Alta's Complaint makes clear, "information disclosed pursuant to the 2014 NDA is not the subject of [Alta's] claims."  D.N. 77 at p.14, fn.1.  Nor could it be, since the 2014 NDA forum-selects Korean courts.  Nonetheless, even though Alta has disavowed claims under the 2014 NDA, Alta continues to seek discovery concerning information exchanged pursuant to its terms.  ***Alta cannot have it both ways.***  If information disclosed pursuant to the 2014 NDA is not in the case, then the ESI of individuals whose interactions were solely pursuant to that agreement is not relevant.  If, however, it is Alta's position that information

**O'CONNOR AND ASSOCIATES**

exchanged pursuant to the 2014 NDA is relevant, then this dispute belongs in Korea.

Alta posits that, because these individuals requested or evaluated samples in 2013-15, this somehow proves they were engaged in an ongoing effort to misuse other information provided by Alta under the 2011 NDA.  This is rank speculation, without basis.  LGE is prepared to make an offer of proof that the individuals listed below were either part of LGE's mobile communications business unit, or were working with that unit.  This separate group, an entirely different business unit than the unit that conducted diligence of Alta in 2011-12, requested and evaluated samples between 2013-15.  This separate group had little or no knowledge of the prior investment discussions with Alta, and was merely assessing the samples for possible purchase to use in LGE's products (and they found Alta's samples unsatisfactory).

The LGE personnel in this category are: **Youngtae Kim, Jae Kyu (Joshua) Lee, Hyunhak Cho, Jang-Bum Heo, Gi Rag (Greg) Lee, Jaewoo Shin,** and **Kyungchul (Casey) Kim**.

Further, **John Winston Min** was formerly employed by LGE's US subsidiary, but left in 2016.  His sole alleged involvement involves activities related to the 2014 NDA.

Additionally, **Minsoo Kim** was generally investigating products for procurement, discovered Alta online, and requested samples in 2015 independent of the 2011 or 2014 NDA activities (neither of which he knew about).  His work was not covered by NDA, and he found the samples' performance unsatisfactory, so did not proceed.

4. <u>**Jeong-Won Lee**</u>:  During the relevant period, Lee was employed by a non-party LG entity, and is only alleged to have expressed interest in visiting Alta (though not to have actually visited).  This is far too remote and speculative.

5. <u>**Individuals who have limited involvement, and/or overlap with others**</u>:  **Changhyung Jeong** (Alta's only basis is that Jeong allegedly contacted Alta's tool manufacturer), **Younghak Chang** (Alta's only basis is that Chang attended a 2011 meeting along with 3 others, two of whom are among the agreed custodians below),  **Dongjoo You** (Alta's only basis is You's listing as a co-inventor on the patent application identified in the Complaint), and **Jincheol Cho** (Alta asserts only that Cho was "identified by LGE in August 2011 as being in charge of discussions with Alta" but alleges no actual involvement).  For these individuals, before requiring LGE to undergo the burden and expense of collection, Alta should be required to make a particularized showing of relevance and insufficiency of discovery from others.

6. **Co-authors of articles**:  For several people, their sole involvement is as co-authors of articles that Alta contends disclose its trade secrets.  This is too speculative, absent some additional factual nexus showing they are connected to LGE's dealings with Alta, and/or some more particularized showing of how the articles purportedly disclose Alta's secrets.  These individuals are **Hyeunseok Cheun, Sung-Tae Hwang, Soohyun Kim,** and **Hyun Lee.**

## Custodians LGE would agree to

1. **Custodians LGE has agreed to**:  **Yoon-Ho Choi**, **Heonmin Lee**, and **Won Ki Moon (**listed in LGE's Rule 26(a) disclosures).

2. **Others LGE would agree to**:  **Joonhyoung Cho, Doosup Hwang, Joo Yeon Sung.**

3. **Henry Chung**:  Chung is employed by LGEMR, a wholly owned subsidiary of LGEUS.  LGEMR is an indirectly wholly owned subsidiary of defendant LGE, which owns LGEUS.  LGE has no access to LGEMR's data systems.  LGE's position is that the more expedient process would be a subpoena to LGEMR for Chung's documents.

Documents from 8-10 LGE custodians should suffice to flesh out the document discovery issues herein.  This is appropriate and proportional to the size and needs of the case.

## Parties' Positions on Whether the Court Should Conduct a Hearing

**Alta's Position**: Alta contends that a hearing is not required on this issue but would welcome one if the Court needs additional information.

**LGE's Position**:  LGE requests a hearing.  Alta is attempting to impose overly burdensome, excessively costly, and entirely unreasonable discovery obligations upon LGE, and LGE would like the opportunity to present the Court with a full record from which to decide these issues.

## Discovery Cut-Off Dates for Fact and Expert Discovery

Pursuant to the Court's June 27, 2018, Case Management Order (D.N. 31), the close of fact discovery is August 1, 2019, and the close of expert discovery is October 3, 2019.

## Attestation of Compliance With Standing Order

The Parties have complied with the requirement that lead counsel for the parties confer about the discovery dispute, via telephonic conference on January 25, 2019, attended by Steven Levitan, Christian Mammen and Aaron Oakley for LGE and by John O'Connor, Joe Calhoun, Dirk van Ausdall, and Gareth Evans for Alta.

O'CONNOR AND ASSOCIATES

**Specific Discovery Material at Issue**

This dispute involves the obligations of the parties to discuss their obligations and needs with regard to the relevant time period for discovery and the ESI custodians under section 4 (a), (b), and (c) of the Stipulated Order re Discovery of Electronically Stored Information. (DN 43.)

Very truly yours,

/s/ John D. O'Connor                         /s/ Steven M. Levitan
John D. O'Connor                             Steven M. Levitan
O'Connor and Associates                      Hogan Lovells US LLP
415-693-9960                                 650-463-4032
Attorneys for Plaintiff Alta Devices, Inc.   Attorneys for Defendant LG Electronics, Inc.

**O'CONNOR AND ASSOCIATES**